STATE, Appellant, *v.* QUANTIC, Respondent.

(No. 2,505.)

(Submitted March 4, 1908. Decided March 16, 1908.)

[94 Pac. 491.]

*Water Rights—Adverse Possession—Pleadings—Reply—Clerical Errors—Dates—Default — Setting Aside—Judgment—Technical Error.*

Water Rights—Adverse Possession—Pleadings—Reply—Default.

1. Defendant in a suit involving a water right denied every material allegation of the complaint, set up his right by appropriation, and further alleged that "for more than ten years last past" he had been in the adverse possession of the ditch and water right. Plaintiff did not file any reply, and defendant had judgment by default. *Held,* that the allegation relative to adverse possession required a reply, and that, therefore, judgment by default was properly entered.

Default—Judgment—Extent of Relief.

2. In Code of Civil Procedure, section 722, as amended by Laws of 1899, page 143, providing that, if plaintiff fails to reply or demur to the counterclaim, defendant shall be entitled to the same relief as a plaintiff on the failure of defendant to demur or answer the complaint, and if the answer contains new matter and plaintiff fails to reply or demur thereto within the time allowed by law, defendant may move for such judgment as he may be entitled to upon "such statement," the words "such statement" mean the statement of the new matter relied on as constituting a defense, without any reference to the matter set up in the complaint.

Water Rights—Pleadings—Clerical Errors—Dates.

3. Where defendant in a water right suit set up his prescriptive right to the water in dispute, an allegation that his predecessor in interest began the diversion of water on a certain date in "1901," whereas subsequent allegations showed that "1891" was intended instead, the court properly treated the substitution of "1901" for "1891" as a clerical error and gave judgment accordingly.

Same—Attorney General—Service—Default—Setting Aside—Insufficient Grounds.

4. In an action, commenced by the state, involving a water right, the defendant's answer among other things set up title in him by adverse possession. Upon failure of plaintiff to reply, a default was entered. From the affidavits filed in support of a motion to set the default aside it appeared that, while the complaint was prepared and signed by the attorney general, the county attorney of the county in which the suit was brought had been intrusted with its prosecution. A copy of the answer was served on the attorney general, but none upon the county attorney. It appeared further that each of these officers depended upon the other to attend to the case. Although the court had the motion for judgment for failure to reply, and the one to set aside the default under advisement for five months, no reply was ever tendered. *Held,* that the service of the answer upon the at-

torney general was proper, and that under the circumstances the court was justified in refusing to reopen the default.

Same—Judgment on Pleadings—Admissions.

5. Where the state, by its complaint, claimed all the waters of a certain creek, "being about sixty inches," and defendant alleged that he had appropriated "all of the water in said creek, being about fifty inches," and that he had acquired the right by adverse user to "the whole of the waters of said creek," plaintiff, by failure to reply to the latter allegation, admitted defendant's right, and it was proper for the court to render judgment on the pleadings without proof.

Same—Judgment—Technical Error.

6. A judgment entered in the action. referred to in paragraph 1 above, upon failure of plaintiff to reply to defendant's claim of adverse possession, which awarded the latter a right by appropriation, also alleged in the answer but put in issue by the complaint, was technically erroneous. The decree should have been that defendant acquired his right by prescription.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

ACTION by the state of Montana against Job B. Quantic to restrain interference with water appropriated by plaintiff. From a judgment for defendant, plaintiff appeals. Modified and affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Appellant.

It is apparent that paragraphs 6 and 7 of respondent's alleged counterclaim merely put in issue the allegations of appellant's complaint, and it is equally clear that the allegations of appellant in its complaint directly contradict such allegations of respondent, and therefore no reply was necessary in order to raise an issue thereon.    (18 Ency. of Pl. & Pr. 695; *Taylor* v. *Gilbert,* 92 Iowa, 587, 61 N. W. 203; *Colby* v. *McOmber,* 71 Iowa, 469, 32 N. W. 459; *Medlend* v. *Walker,* 96 Iowa, 175, 64 N. W. 797; *Goddard* v. *Fulton,* 21 Cal. 430; *Engel* v. *Bugbee,* 40 Minn. 492, 42 N. W. 351; *State* v. *Rau,* 93 Mo. 126, 5 S. W. 697; *Sylvis* v. *Sylvis,* 11 Colo. 319, 17 Pac. 912.)

If the allegations of paragraphs 6 and 7 of the alleged counterclaim are not new matter constituting merely affirmative denials, then they constitute an attempt to plead a further cause of action

by way of counterclaim, that of adverse possession or title by prescription, and, as such, it should have been separately stated and numbered and complete in itself. (Code Civ. Proc., sec. 672; *Murray* v. *City of Butte,* 35 Mont. 161, 88 Pac. 789; *Woodward* v. *Faris,* 109 Cal. 12, 41 Pac. 781; *Larsen* v. *Clark,* 21 Utah, 38, 59 Pac. 234.)

As there was nothing in the alleged counterclaim requiring a reply, the plaintiff could not be in default for failure to file one. (*Babcock* v. *Maxwell,* 29 Mont. 31, 74 Pac. 64; *Christiansen* v. *Aldridge,* 30 Mont. 446, 76 Pac. 1007.)

It was an abuse of discretion for the court to refuse to set aside such default on the ground of excusable neglect. (*Benedict* v. *Spendiff,* 9 Mont. 85, 22 Pac. 500; *Heardt* v. *McAllister,* 9 Mont. 405, 24 Pac. 263; *Morse* v. *Callantine,* 19 Mont. 87, 47 Pac. 635; *In re Davis' Estate,* 15 Mont. 399, 39 Pac. 292; *Collier* v. *Fitzpatrick,* 22 Mont. 553, 57 Pac. 181; *Greene* v. *Montana Brewing Co.,* 32 Mont. 102, 79 Pac. 693.)

The allegations of the counterclaim, in order to sustain a judgment by default or on the pleadings, must not only be material and well pleaded, and sufficient to stand all the tests required of a complaint upon which a default is rendered, but also must be considered in connection with the complaint already filed in the action, for the purpose of determining if they tend to diminish or defeat the appellant's recovery. (6 Ency. of Pl. & Pr. 45; *Swain* v. *Burnette,* 76 Cal. 299, 18 Pac. 394; *Johnston* v. *Mantz,* 69 Iowa, 710, 27 N. W. 467.) The alleged counterclaim of respondent is ambiguous, unintelligible and uncertain, in that it is impossible from the allegations thereof to determine upon what date, if any, respondent or his predecessors in interest appropriated water from such Spring creek.

*Mr. John A. Luce,* for Respondent.

A pleading should be construed so as to make all of its parts harmonious, if possible. (*Farish* v. *Coon,* 40 Cal. 33.) The universal rule of construction prevails that the later paragraph in a pleading, contract or statute explains and restricts a pre-

ceding paragraph. The whole pleading should be looked to in its interpretation. Examining the whole of the counterclaim, and applying the general rules of construction and the provisions of section 740, Code of Civil Procedure, that the allegations of a pleading must be liberally construed, it certainly cannot be claimed that the appellant could have been or was in any way misled.

The attorney general of the state is the proper officer to represent the state of Montana in all cases except criminal causes. (Pol. Code, secs. 460, 4450.) Not only was there no application or affidavits of merit (*Schaefer* ·v. *Gold Cord Min. Co.* (Mont.), 93 Pac. 344), but there was no diligence shown even after Walrath's discovery of the entry of the default. (*Andrews* v. *Campbell,* 94 Ill. 577.)

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action is as follows:

"Comes now the state of Montana, by and through its legal representative, Albert J. Galen, Attorney General of the state of Montana, and for cause of action alleges:

"(1) That by an executive order of the President of the United States there was created, on February 15, 1868, the military reservation of Ft. Ellis, situated in Gallatin county, state of Montana.

"(2) That said military reservation consisted of a large number of acres of land, including section 10 and section 15, of township 2 south, range 6 east.

"(3) That said land was occupied by the United States government as a military reservation until the year 1891, and in the year 1868 or 1869 the United States government appropriated all of the waters of a certain creek, known as 'Spring creek,' rising on section 36, in township 2 south of range 6 east, in Gallatin county, Montana, and diverted said water by means of a ditch tapping said Spring creek upon its west bank at a point about a quarter of a mile east of said section 15, which ditch was 30 inches in width on the bottom by 18 inches in depth,

and carried and conducted all the waters of said Spring creek, being about 60 inches, miner's measurement, or a flow of 1½ cubic feet per second of time, to and upon said section 15, where the same was continuously used by the United States government from the date of its diversion for irrigating, domestic, military and other useful and beneficial purposes upon said section 15, upon which section were located all the government buildings used in connection with said military reservation.

"(4) That by Act of Congress of February 13, 1891, all of said military reservation was abandoned and restored to the public domain, save and except six hundred (600) acres of said section 15 and the southeast quarter of the southeast quarter of said section 10; the forty (40) acres of said section 15 that was restored to the public domain being the southeast quarter of the southeast quarter of said section.

"(5) That by said Act of Congress of February 13, 1891, the said 600 acres of said section 15, and the said 40 acres of said section 10 were continued as a military reservation for the use and benefit of the militia of the state of Montana, and said Act granted to the state of Montana permission to use said land as a permanent military camp ground.

"(6) That the state of Montana immediately took possession of and occupied said land pursuant to the permission given it by said Act of Congress so to do, and has ever since continued in the possession of said land, and has at all times during such possession used the water diverted from said Spring creek by the United States government as hereinabove alleged upon said land for irrigation, domestic, and military purposes, except when prevented from so doing by this defendant.

"(7) That all of said land is arid land, and requires artificial irrigation in order to raise grass, trees, grains, hay and other products; that a large part of said land has been cultivated and sown in grasses, and trees have been planted around the buildings situated on said land; and that the use of said water is necessary for the irrigation of such grass and trees, and for domestic purposes for the custodian of said reservation

and for the use of the militia and their stock during the encampments of the militia held on such ground, and for other useful and beneficial purposes.

"(8) That during the summer and irrigating season of 1906 the defendant in this action, whose rights are subsequent in time and inferior in right to those of the plaintiff in the use of the waters of said Spring creek, diverted all the waters from said creek at a point above the headgate of the ditches of the plaintiff, and thereby withheld from the plaintiff the water to which it was justly entitled and actually needed and now needs for the irrigation of the grass and trees and other crops growing on said land, to the great and irreparable injury and damage of the plaintiff, and the defendant continues and threatens to continue to divert and use said waters, and will continue so to do unless restrained from so doing by the judgment and decree of this court, or by restraining order issued herein; that by reason of said wrongful acts of defendant in diverting said water as aforesaid, and his threats to so continue to divert the same, he is destroying the usefulness of the plaintiff's crops and land, and the plaintiff has no speedy or adequate remedy at law, and his damage will be irreparable.

"For a further and separate cause of action the plaintiff alleges:

"(1) That under and by virtue of the Act of Congress of February 13, 1891 (26 Statutes at Large, 747), the plaintiff, the state of Montana, came into possession of the southeast quarter of the southeast quarter of section 10, and all of said section 15, except the southeast quarter of the southeast quarter of said section 15, all situated in township 2 south of range 6 east, to be used and occupied by the state of Montana for the purposes mentioned in said Act of Congress, namely, as a permanent militia camp ground.

"(2) That immediately upon the passage of said Act of Congress the state of Montana, under the permission granted it by said Act, took possession of said land, and has ever since

continuously used and occupied the same as a permanent military camp ground, and is now using same for said purpose.

"(3) That all the buildings formerly owned and occupied by the United States government as a part of Fort Ellis are situated upon this said section 15, and passed to the state of Montana, to be used by it in connection with said land as a permanent militia camp ground; that it was necessary, for the care and preservation of said buildings and of said land, for the state of Montana to have a custodian resident upon said ground, and to have the ground seeded to grass or other grains, and to plant trees around the buildings situated thereon, in order to make said grounds suitable for the purposes mentioned in said Act of Congress; that said land is arid land, and it is necessary to irrigate the same in order to properly raise grass, trees, or grain; that the state of Montana has at all times, and does now, keep a custodian on said land for the purpose of caring for said buildings and irrigating the grass, lawns, trees and other grasses and grains growing upon such land, and of keeping the same in condition suitable for a permanent militia camp ground; that it is necessary to have water upon said land for domestic use for said custodian and for the use of said militia and their live stock when holding encampments thereon.

"(4) That immediately after the passage of said Act of Congress, and during the summer of 1891, the state of Montana appropriated all of the waters of a certain creek known as 'Spring creek,' rising on section 36, in township 2 south of range 6 east, in Gallatin county, Montana, and diverted said water by means of a ditch theretofore constructed by the United States government, which ditch taps said Spring creek on its west bank at a point about a quarter of a mile east of said section 15, and is 30 inches in width on the bottom by 18 inches in depth and carries and conducts all the waters of said Spring creek, being about 60 inches, miner's measurement, or a flow of 1½ cubic feet per second of time, to and upon said section 15, where the same has been continuously used by the state of Montana from the date of its appropriation up to the present

time for irrigating and domestic, military and other useful and beneficial purposes upon said section 15, except when the plaintiff has been prevented therefrom by the wrongful acts of the defendant.

"(5) That during the summer and irrigating season of 1906 the defendant in this action, whose rights are subsequent in time and inferior in right to those of the plaintiff in the use of the waters of said Spring creek, diverted all the water from said creek at a point above the headgate of the ditches of the plaintiff, and thereby withheld from the plaintiff the water to which it was justly entitled and actually needed and now needs for the irrigation of the grass and trees and other crops growing on said land, to the great and irreparable injury and damage of the plaintiff, and the defendant continues and threatens to continue to so divert and use said waters, and will continue so to do unless restrained from so doing by the judgment and decree of this court, or by restraining order issued therein; that by reason of said wrongful acts of defendant in diverting said water as aforesaid, and his threats to so continue to divert the same, he is destroying the usefulness of the plaintiff's grass, trees, crops and lands, and the plaintiff has no speedy or adequate remedy at law, and his damage will be irreparable.

"In support of the application herein for an injunction the plaintiff attaches hereto the affidavit of Andrew C. Harding, the plaintiff's custodian of said building and land.

"Wherefore, to the end that the plaintiff may have complete and equitable relief, it demands: (1) That the said plaintiff be adjudged and decreed by this honorable court to be the prior appropriator and exclusive owner of all the water that flows in said Spring creek to the extent of the capacity of its said ditch herein described.   (2) That a temporary injunction or restraining order be issued by this court enjoining and restraining the said defendant, his successors, agents, servants and employees from diverting, turning out, or in any way using any of the water of said Spring creek, to the full capacity of the ditch of the plaintiff, and from in any manner interfering with the flow

of the amount of water appropriated by the plaintiff to and upon its said land, and from in any manner or by any means whatsoever preventing or delaying the plaintiff, its agents, servants and employees, from using any of said water to the full capacity of its said ditch for the purpose of irrigation, domestic, military and other useful and beneficial purposes upon the land described in this complaint.   (3) That upon the final hearing of this cause, said injunction may be made perpetual, and that the plaintiff have such other and further relief in the premises as may be equitable and the court may see fit to give.

> "ALBERT J. GALEN, Attorney General,
> "A. J. WALRATH, County Attorney,
> > "Attorneys for Plaintiff."

It appears that a demurrer of some kind was filed by the defendant and overruled by the court.   Thereupon the defendant filed the following answer:

"Comes now the defendant and answering the first cause of action of plaintiff's complaint:

." (1) Admits the allegations of paragraphs 1 and 2.

" (2) Denies that said land was occupied as a military reservation until the year 1891, but avers that the United States government continued to use and occupy said military reservation until July 26, 1886, when said military reservation was abandoned and discontinued, and by executive order of the President the same was placed under the control of the Secretary of the Interior under the provisions of the Act of Congress July 5, 1884, entitled 'An Act to provide for the disposal of abandoned and useless military reservations.'

" (3) Denies that in the years 1868 or 1869, or in any other. year, the United States government appropriated all or any of the waters of said Spring creek by means of said ditch described in plaintiff's complaint, or any other ditch, or carried or conducted through said ditch or otherwise, all of the waters of said Spring creek, or 60 inches, miner's measurement, or a flow of $1\frac{1}{2}$ cubic feet per second of time, or any other quantity of water, to or upon said section 15, township 2 south of range

6 east, for the purpose of irrigation, domestic, military, or any other useful or beneficial purposes upon said section 15, or that from said date to the date of abandonment of said reservation the same was continually used for said purposes, or any thereof, except that a portion of the waters of said Spring creek were for a short time used by the government of the United States for the purpose of running a sawmill; but the defendant avers that the use of said water by said government was, long prior to the abandonment of said military reservation, abandoned and discontinued, and ever since the abandonment of said military reservation no part of said water has been used by the government of the United States, but that the use of the same and all thereof has continued to be abandoned and every use thereof wholly discontinued, and that said abandonment has continued for the space of more than 10 years last past.

"(4) Defendant admits that all or nearly all of the government buildings used in connection with said reservation were situated upon said section 15.

"(5) Denies that by the said Act of Congress of February 13, 1891, said military reservation was abandoned and restored to the public domain, but avers that said military reservation was abandoned by said executive order of July 26, 1886, but admits that provision was made for the disposition of said abandoned military reservation by said Act of February 13, 1891, and denies that 600 acres, or any number of acres, in section 15, or the southeast quarter of the southeast quarter of section 10, or any portion thereof, was not abandoned and restored to the public domain by said executive order or by said Act of Congress of February 13, 1891.

"(6) Denies that by said Act of Congress of February 13, 1891, said 600 acres in said section 15 and said 40 acres in said section 10, or any particular portion of either of said sections or of said military reservation, was continued as a military reservation, but admits that by said Act of Congress of February 13, 1891, there was granted to the state of Montana one section of said reservation, to be selected according to the legal

subdivisions so as to embrace the buildings and improvements thereon, to be used by said state as a permanent militia camp ground, or for other public purposes in the discretion of the state legislature.

"(7) Denies that the state of Montana immediately took possession of and occupied said land, but admits that under the provisions of said Act of Congress of February 13, 1891, the state of Montana in due course of time, on or about the 28th day of November, 1891, selected said 600 acres in said section 15 and said 40 acres in said section 10, with the buildings thereon, which selection was approved by the Secretary of the Interior April 20, 1892.

"(8) Defendant admits that the state of Montana has from time to time since the said approval of the selection of said land described in plaintiff's complaint used the same for a period not exceeding ten days in any one year for the purpose of a military encampment, and avers that during the last five years only one encampment, to wit, in the year 1905, has been held upon said land described in plaintiff's complaint.

"(9) Denies that the said state of Montana, during all of the times it has had possession of said land, has used said water or any water alleged to have been diverted by the government of the United States from said Spring creek upon said land for irrigation, domestic, or military purposes at any time or times, except that during the militia encampments heretofore held thereon some of said water of Spring creek, not exceeding 10 inches thereof, may have been used for the purpose of obtaining water for domestic purposes for the militia of said state during said ten days' encampment.

"(10) Admits that said land described in plaintiff's complaint is arid and requires artificial irrigation in order to raise agricultural crops, but denies that the state of Montana has ever cultivated said land, or any part thereof, or sown the same in grasses, or that the use of said water is necessary for the irrigation of any such grass or trees, or that any provision has ever been made for the use of said land, or any thereof, as a

farm or for farming purposes, or that any provision has ever been made for a custodian of said land, or that any of said water is necessary for the use of any custodian for domestic purposes, irrigation, or any other purposes whatsoever.

"(11) Denies that said water, or any thereof, is necessary for the use of said militia or their stock during encampments of militia held on said ground, or that the same ever was necessary for the said purposes.

"(12) Denies that the rights of this defendant are subsequent in time or inferior in right to those of the plaintiff in the use of the waters of said Spring creek, and denies that the plaintiff is entitled to the use of any of the waters of said Spring creek for any purposes whatever.

"(13) Defendant admits that during the irrigating season of the year 1906, as defendant has done for many years last past, defendant diverted all of the waters of said Spring creek and used the same for the irrigation of his land hereinafter described, but denies that he withheld any water from the plaintiff, or that the plaintiff at that time or ever needed any of the said water for the irrigation of any ground, trees, or crops whatsoever upon said land, or that plaintiff had any such grass, or crops thereon, but admits that there are a few trees on said land.

"(14) Defendant admits that he intends to use the waters of said Spring creek for the purpose of irrigation, domestic, and other lawful and useful purposes, as he is entitled to do, in the future.

"And defendant denies each and every allegation in the said first cause of action set forth not herein specifically admitted or denied.

"And the defendant, answering the further and separate cause of action of the plaintiff:

"(1) Admits the allegations of the first paragraphs thereof.

"(2) Denies that immediately upon the passage of the said Act of Congress the plaintiff took possession of said land, but

avers that the same was selected by the state of Montana on or about the 28th day of November, 1891, which selection was approved by the Secretary of the Interior April 20, 1892, and has been since said approval in the possession thereof as a permanent militia camp ground, but denies that the plaintiff is now using the same for such purposes.

"(3) Admits that the buildings formerly owned and occupied by the United States government as a part of Fort Ellis, or most thereof, are situated upon said section 15, township 2 south of range 6 east, but denies that the plaintiff has ever made any provision for a resident custodian thereof, and denies that it was or is necessary to have said ground seeded to grass or grain, or to plant trees around the buildings situated thereon, in order to make the said grounds, or any grounds, suitable for the purposes mentioned in said Act of Congress.

"(4) Admits that the said land is arid and requires irrigation in order to raise crops of grain and grasses.

"(5) Admits the Governor of the state of Montana, without any authority in the premises, has pretended to keep a person at said Fort Ellis as custodian, but denies that the legislature has ever provided for said custodian, or that it is necessary for such custodian to irrigate any grass, lawn, trees, or other grasses, or any grains upon said land or any thereof.

"(6) Denies that it is necessary to have or use any of the waters of said Spring creek for the domestic use of said custodian, or for the use of said militia, or for their live stock, when holding encampments thereon, or for irrigation or other purposes.

"(7) Denies that immediately after the passage of the said Act of Congress, or during the summer of 1891, or at any other time, the state of Montana appropriated all or any of the waters of said Spring creek, or diverted said waters by means of a ditch theretofore constructed by the United States government as described in plaintiff's complaint, or carried or conducted all of the waters of said Spring creek, or 60 inches, miner's measurement, or a flow of 1½ cubic feet per second of

time, upon said section 15, or that the same or any part thereof has been continuously used by the state of Montana from the said date or any date of appropriation to the present time for irrigation, domestic, military, or other useful or beneficial purposes, and denies that the state of Montana had any use for said water for irrigation or domestic purposes, or that the same or any part thereof was necessary for any military purposes upon said section 15, or otherwise or at all.

"(8) Denies that the defendant has ever prevented the plaintiff from the use of the waters of said Spring creek by any wrongful acts whatever, or that the plaintiff has ever at any of the times mentioned in plaintiff's complaint been, or now is, entitled to the use of any of the waters of said Spring creek for any purposes whatsoever.

"(9) Denies that the rights of the defendant are inferior or subsequent to any rights of the plaintiff to the use of the waters of Spring creek, but admits that in the irrigation season of 1906, as defendant had done in previous years and as he had a right to do, defendant diverted all the waters of Spring creek and used the same for the purpose of irrigation, domestic and other lawful, useful and beneficial purposes upon the land of the defendant hereinafter described.

"(10) Denies that defendant, by the use of said water or otherwise, or at all, withheld from the plaintiff any water to which it was entitled, or which it needed or now needs for irrigation of any grass, trees, or crops upon said land, or that by the use of said water or in any other way or manner defendant damaged or injured the plaintiff.

"(11) Admits that the defendant intends to use the waters of said Spring creek in the future for the purposes of irrigation and domestic use and for the watering of stock upon his land hereinafter described, through the ditches of defendant.

"(12) Denies that defendant, by the use of said water, is destroying the usefulness of plaintiff's grass, trees, crops, or lands, or that the plaintiff has been or will be damaged or injured by the use of the said waters by the defendant. And de-

fendant denies each and every allegation in said further and separate cause of action not herein specifically admitted or denied.

"And defendant denies each and every allegation in said complaint of plaintiff contained not herein specifically admitted or denied.

"And the defendant, further answering said complaint of plaintiff, and as for a counterclaim, avers:

"(1) That he is a farmer, owning, occupying, farming and using, and is owner in fee of the southwest quarter of the southwest quarter of section 14, and the southeast quarter of the southeast quarter of section 15, and the northeast quarter of the northeast quarter of section 22, and the northwest quarter of the northwest quarter of section 23, and north half of southwest quarter of section 14, all in township 2 south of range 6 east, M. P. M., containing 240 acres.

"(2) That said land and all thereof is arid land, and will not without artificial irrigation raise, mature, or produce agricultural crops, but that with proper irrigation said land will raise abundant crops of hay, grain and vegetables.

"(3) That on or about the 13th day of April, A. D. 1901, Elisha A. Rouse, immediate grantor and predecessor of the defendant for the purpose of irrigating said land and for domestic and culinary purposes and the watering of stock, dug and constructed a ditch tapping that certain stream in Gallatin county, Montana, known and called 'Spring creek,' being the stream mentioned and described in plaintiff's complaint, on its east bank, and which ditch ran thence in a generally northerly direction for about one-quarter of a mile to and upon the land of defendant above described, and by means of said ditch so dug and constructed diverted all of the waters of said Spring creek, being about 50 inches, miner's measurement, of water.

"(4) That since the building of said ditch and diversion of said water this defendant and his grantors and predecessors in interest have used all of the waters of said Spring creek each year without let or hindrance of any person or persons what-

soever upon the said land of this defendant for the purpose of irrigation, domestic and culinary use and the watering of stock.

"(5) That this defendant is now the owner of the right to the use of 50 inches, miner's measurement, or a flow of 1¼ cubic feet per second of time, of the said waters of said Spring creek appropriated on the 13th day of April, 1891, for the purpose of irrigation, domestic, culinary, and other lawful and useful purposes, which said water right and said ditch are appurtenant to the said farm of this defendant, and that the said ditch and said water of said Spring creek are necessary for the proper irrigation of the land of this defendant, and for domestic and culinary purposes and the watering of stock and other lawful purposes.

"(6) And this defendant further avers that continuously since the 13th day of April, 1891, each year, and for more than ten years last past, this defendant and his grantors and predecessors in interest have been in the exclusive, open, notorious, and adverse possession of the said water ditch and water right, and have used the whole of the waters of said Spring creek openly, notoriously, adversely and exclusively against all the world under a claim of right for the uses and purposes hereinbefore set forth.

"(7) And this defendant further avers that the defendant's right to the use of said water is prior and paramount to any right or claimed right whatsoever of the plaintiff in or to any of the waters of said Spring creek.

"(8) And defendant further avers that the plaintiff, through its purported custodian, has attempted to interfere with the use of the said water by the defendant, and threatens to interfere with the use thereof by defendant for the purposes aforesaid, to the great and irreparable injury and damage of the defendant.

"Wherefore the defendant, having fully answered, prays: (1) That the plaintiff take nothing by virtue of this action. (2) That defendant be decreed to be the owner of 50 inches, min-

er's measurement, or a flow of 1¼ cubic feet per second of time, of the waters of said Spring creek for the purpose of irrigation, culinary purposes, and the watering of stock upon the land of defendant hereinbefore described, and that the defendant's right be decreed to be paramount and superior to any claim or right of the plaintiff. (3) That plaintiff, and all of its officers, agents, attorneys, solicitors, and all persons acting by, through, or under it or them, or any of them, be forever enjoined and restrained from interfering with the rights of the defendant in and to the use of the waters of said Spring creek for irrigation and culinary purposes and the watering of stock. (4) That the defendant recover his costs and disbursements herein. And for such other and further relief as may be meet and equitable in the premises defendant will ever pray.''

On January 21, 1907, the court made the following order in its minutes: ''Default of plaintiff is entered for want of filing a reply to answer.''

On January 29, 1907, defendant's counsel filed the following motion:

''To the Above-named Plaintiff, and to Albert J. Galen, Attorney General, A. J. Walrath and B. B. Law, County Attorney of Gallatin County, Montana, and W. H. Poorman, Assistant Attorney General, Attorneys for Plaintiff:

''You and each of you will please take notice that the defendant in the above-entitled action, at the courtroom of said court, in the city of Bozeman, county of Gallatin, state of Montana, on Monday, the 4th day of February, A. D. 1907, at ten o'clock a. m. of said day, or as soon thereafter as counsel can be heard, will move the said court for judgment on the pleadings, upon the following grounds, to wit: (1) That no reply has been filed herein, and that the new matter and the affirmative defense contained in the defendant's answer are all admitted by the plaintiff. (2) That said new matter and affirmative defenses and counterclaim so admitted entitle the defendant to judgment as prayed for in his answer. (3) That the said new matter and affirmative defenses and counterclaim, admitted by the plaintiff,

show that the plaintiff is not entitled to recover in this action, but that the defendant is the owner of 50 inches, miner's measurement, or a flow of 1¼ cubic feet per second of time, of the waters of said Spring creek for the irrigation, culinary purposes, and watering of stock upon the land of the defendant described as [describing land], appropriated on the 13th day of April, 1891, and that the said right to the use of said water by the defendant is prior and paramount to any right of the plaintiff.''

On February 4, 1907, the plaintiff filed its motion to set aside the default theretofore entered. That motion recited that it was based ''upon the grounds of mistake, inadvertence, surprise and excusable neglect upon the part of the attorneys for the state.'' To the motion paper were attached the following affidavits:

''A. J. Walrath, being duly sworn, says that he was county attorney of Gallatin county during the year 1906 and up to the first Monday of January, 1907, and during said time was one of the attorneys for the plaintiff in the above-entitled action, and residing at Bozeman, Montana, which is also the residence of the attorney for the defendant in said action; that his associate counsel in said action was the Attorney General of Montana, whose residence is Helena, Montana; that on the 11th day of December, 1906, the attorney for said defendant filed his answer in said action, but made no service thereof upon him, and he had no knowledge of the filing of said answer until the attorney for said defendant moved the court to enter the default of the plaintiff for failure to file a reply to said answer.          A. J. WALRATH.

''Subscribed and sworn to before me this 4th day of February, 1907.          CHAS. B. ANDERSON,
''Clerk of District Court.''

''E. M. Hall, being duly sworn, says: That he is Assistant Attorney General of the state of Montana, and one of the attorneys for the plaintiff in the above-entitled action. That the

Attorney General prepared the complaint in said action and mailed the same to Mr. A. J. Walrath, the county attorney of Gallatin county, and with said complaint sent him a letter of instructions, which contained the following: 'As the state is a party to this action and beneficially interested therein, we will expect you to take charge of the action and represent the state in all matters arising in connection therewith in your county.' That on or about December 14, 1907, the Attorney General received a copy of the defendant's answer from Mr. John A. Luce, but did not prepare a reply to said answer, for the reason that under the above instructions to the county attorney he believed that the county attorney would file a reply, if one was necessary.                                   E. M. HALL.

"Subscribed and sworn to before me this 4th day of February, 1907.                         CHAS. B. ANDERSON,
                                        "Clerk of Court."

Defendant's motion for judgment on the pleadings and plaintiff's motion to open the default were argued together on February 4th, and on July 13th following the court overruled the plaintiff's motion and granted that of the defendant. On July 20th the defendant presented to the court a judgment for signature, and plaintiff, by the county attorney, objected in open court to the signing and filing of judgment without proof on the part of the defendant. This objection was overruled, and the court thereupon entered the following judgment:

"In the above-entitled action the plaintiff filed its complaint against the defendant on the 11th day of July, A. D. 1906, and thereafter the defendant served and filed his duly verified answer on the 10th day of December, A. D. 1906, pleading new matter and setting forth a counterclaim against the plaintiff; and no demurrer or reply to said answer having been filed by the plaintiff within the time allowed by law, the defendant, after due notice, on the 4th day of February, A. D. 1907, moved the court for judgment on the pleadings, which was argued to the court by counsel for plaintiff and defendant, and submitted and taken under advisement, and thereafter, on the 13th day

of July, A. D. 1907, the court sustained said motion for judgment on the pleadings and ordered judgment for the defendant accordingly. Wherefore, by reason of the law and the premises, it is ordered, adjudged and decreed: (1) That the plaintiff take nothing by reason of this action. (2) That the defendant is the owner of the right to the use of 50 inches, miner's measurement, or a flow of 1¼ cubic feet per second of time, of the waters of said Spring creek in the county of Gallatin, state of Montana, appropriated on the 13th day of April, 1891, for the purpose of irrigation, domestic and culinary purposes and the watering of stock, which water right, together with the ditch conveying said water from the said Spring creek to the land of defendant, is appurtenant to said land, which is described as follows: [Describing land]—which right to the use of said water by defendant is prior and paramount to any right or claimed right of the plaintiff in or to any of the waters of said Spring creek.

"And it is further ordered, adjudged and decreed that the plaintiff, and all of its officers, agents, attorneys, solicitors, and all persons acting by, through, or under it, or them, or any of them, be and they are hereby forever enjoined and restrained from interfering with the said rights of the defendant in and to the use of the waters of said Spring creek for irrigation, domestic and culinary purposes and the watering of stock. And it is further ordered, adjudged and decreed that the defendant recover his costs and disbursements herein expended, taxed at $21.50."

The state appeals from the judgment.

The first contention is that the court erred in ordering the default of the plaintiff entered, for the following reasons: "The new matter set up in the alleged counterclaim was merely an affirmative denial of the allegations of the complaint, and therefore no replication was necessary, and the case was at issue and should have been set for trial."

Section 1891 of the Civil Code provides that in any action commenced for the protection of rights acquired to water under

the laws of the state the plaintiff may make any and all persons who have diverted water from the same stream or source parties to such action, and the court may in one judgment settle the relative priorities and rights of all the parties to such action. Pursuant to the permission therein given, the defendant set forth his claim of right to use all of the water by appropriation as of date April 13, 1891. The allegations relating to defendant's claim of right by appropriation are found in the answer under the denomination of a counterclaim, and in addition to those allegations there is found the further allegation that "for more than ten years last past" the defendant has been in adverse possession of the ditch and water right. It is unnecessary to decide whether or not the allegations of the answer relating to a right by appropriation required a reply. All of the material allegations of the complaint were denied by the answer. The affirmative allegations relating to an appropriation by the defendant would have served as a basis for proof establishing his right to a judgment fixing the date of his appropriation. Whether that right was prior or subsequent to the plaintiff's would depend upon plaintiff's success or failure in proving the allegations of its complaint. The case would have been a different one had the defendant alleged an appropriation prior in date to that claimed by the plaintiff.

It is said in the appellant's brief that the allegations of the counterclaim merely put in issue the allegations of the complaint, and therefore no reply thereto was necessary. We may assume, without deciding, that the allegations of the counterclaim as to an appropriation of water by the defendant, so far as they go, do simply put in issue the averments of the complaint, and therefore required no reply. May the same thing be said of the allegations of adverse possession?

In the case of *Yankee Jim's Union Water Co.* v. *Crary*, 25 Cal. 504, 85 Am. Dec. 145, the court said: "The plaintiff asserts title founded upon prior appropriation in 1851 and 1852 and the continued appropriation down to the time of the alleged diversion by the defendant in 1861; and the defendant as-

serts title acquired by prior appropriation in 1853, together with continuous use from that time to the commencement of the action in 1862.. He also relies upon title by prescription.   *   *   * Although it is not pleaded with great accuracy or technical precision, it [the answer] contains all the substantial allegations necessary in a case where a party sets up title to an incorporeal hereditament which has accrued to him by the continued, uninterrupted, adverse use and enjoyment—a title by prescription. The right to the use of a watercourse in the public mineral lands, and the right to divert and use the water taken therefrom, is acquired by appropriation and user; the person first appropriating it being deemed to have the title, as against all the world, except the United States and persons claiming under them, to the extent that he thus appropriated it before the rights of others attached. The rights thus acquired may be held, granted, abandoned or lost by the same means as a right of the same character issuing out of lands to which a private title exists. The right of the first appropriator may be lost, in whole or in some limited portions, by the adverse possession of another. And when such person has had the continued, uninterrupted and adverse enjoyment of the watercourse, or of some certain portion of it, during the period limited by the statute of limitations for entry upon lands, the law will presume a grant of the right so  held and enjoyed by him.''

In the case of *Hammond* v. *Zehner,* 23 Barb. (N. Y.) 473, the supreme court of New York said that prescription always presupposes a grant. The court in that case quotes the language of Judge Story in *Tyler* v. *Wilkinson,* 4 Mason, 397, Fed. Cas. No. 14,312, as follows: ''By our laws, upon principles of public convenience, the term of twenty years' exclusive uninterrupted enjoyment has been held a conclusive presumption of a grant or right.'' (See, also, *Williams* v. *Nelson,* 23 Pick. 141, 34 Am. Dec. 45.)

In the case of *Faulkner* v. *Rondoni,* 104 Cal. 140, 37 Pac. 883, the supreme court used this language: ''The right which is ac-

quired in and to the waters of a stream by a prior appropriation thereof may be lost, either wholly or in part, by the adverse possession and user of another. And when such adverse claimant has had the continued, notorious, uninterrupted and adverse enjoyment of the water, or of a portion thereof, during the period prescribed by the statute of limitations for entry upon lands, the law will presume a grant of the right so held and enjoyed by him." (See, also, Long on Irrigation, sec. 88.)

Mr. Wiel in his work entitled "Water Rights in the Western States" (page 278, [second edition, page 370]), says: "By one allowing another to divert the water adversely for five years, the right is correspondingly lost by the former and acquired by the latter. * * * It is said that a grant will be presumed to have been made to the adverse claimant, though this is purely a fiction of the law. * * * The right by adverse use must be specially pleaded."

There seems to be no question, under the authorities, but that the right to the use of water may be acquired by prescription as against a private person, and that the lapse of time necessary to give such right is the period limited by the statute of limitations for entry upon lands.

But it is said that the allegations relating to adverse possession amount only to a denial of plaintiff's claim, and no reply was necessary. If that position is correct, then it follows that the defendant could have proven adverse possession under the general denials of his answer, and would have been justified in asking for affirmative relief, irrespective of the counterclaim. Let us bear in mind that the defendant, in addition to his so-called counterclaim of adverse possession, denied every material allegation of the complaint and set forth his claim of right by appropriation. He had already put in issue the allegations of the plaintiff, and the counterclaim added nothing to the denials already made.

We think the Attorney General overlooks the fact that there is a distinction between the acquisition of a water right by ap-

propriation and the acquisition of such right by prescription. Such distinction is pointed out by Mr. Long in his work on Irrigation (section 89), quoting from the opinion of the court in *Smith v. Hawkins,* 110 Cal. 122, 42 Pac. 453, as follows: "The differences are twofold. A prescriptive right could not be acquired against the United States, and can be acquired only by one claimant against another private individual. Again, such an appropriation, to perfect the rights of the appropriator, does not necessitate use for any given length of time, while time and adverse use are essential elements to the perfection of a prescriptive right. One who claims a right by prescription must use the water continuously, uninterruptedly and adversely for a period of at least five years, after which time the law will conclusively presume an antecedent grant to him of his asserted right."

Section 480 of the Code of Civil Procedure reads as follows: "The state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the state to the same, unless: (1) Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced; or (2) the state, or those from whom it claims, shall have received the rents and profits of such real property, or of some part thereof, within the space of ten years." It is not contended that the statute of limitations will not run against the state.

We are of opinion, therefore, that the allegations of the so-called counterclaim amount to something more than denials of plaintiff's averments. It seems to follow that the counterclaim required a reply, at least in so far as the asserted claim of adverse possession was concerned. In support of this last proposition Mr. Wiel cites the cases of *Mathews v. Ferrea,* 45 Cal. 51, and *Winter v. Winter,* 8 Nev. 129. The latter case is not authority for the statement made, but in the former the court said: "The point on which the defendant mainly relies is that the evidence shows that he had acquired a right by prescription to divert the water by means of his dam. To this point

the plaintiffs present several answers. One is that the defend-
ant has not pleaded an adverse user of the water. This an-
swer disposes of the point; for it is clear that the defendant
cannot rely upon prescription, unless it is set up in his answer.''
In 1 Cyc. 1141, we find the rule laid down in this language:
''In most jurisdictions, where adverse possession is relied on as
a defense to an action at law to recover the possession of land,
it need not be specially pleaded, but may be shown under the
general issue or general denial. In other jurisdictions, however,
adverse possession cannot be relied upon to defeat recovery unless
it is especially pleaded.''

While this is technically an action in equity, relief by in-
junction being demanded by both parties, still the right to the
use of the water is primarily involved, and we apprehend that
on that branch of the case the same rules of pleading should be
invoked as in an action to recover possession of land. Under
the chapter heading, ''The Time for Commencing Actions for
the Recovery of Real Property,'' the Code of Civil Procedure
provides: ''No action for the recovery of real property, or for
the possession thereof, can be maintained, unless it appear that
the plaintiff, his ancestor, predecessor or grantor, was seised or
possessed of the property in question, within ten years before
the commencement of the action. * * * '' (Section 483.)
''In every action for the recovery of real property, or the posses-
sion thereof, the person establishing a legal title to the property
is presumed to have been possessed thereof, within the time re-
quired by law, and the occupation of the property by any other
person is deemed to have been under and in subordination of
the legal title, unless it appear that the property has been held
and possessed adversely to such legal title, for ten years before
the commencement of the action.'' (Section 486.)

Whatever may be the rule in other jurisdictions, the practice
is settled in this state by section 558, Code of Civil Procedure,
which provides: ''The objection that the action was not com-
menced within the time limited can be taken only by answer.
The corresponding objection to a defense or counterclaim can

be taken only by reply except where a reply is not required, in order to enable the plaintiff to raise an issue of fact, upon an allegation contained in the answer."

It may be observed, in passing, that the allegations of the complaint do not put in issue the allegations of the counterclaim relating to the character of defendant's possession as being adverse. But it may be contended that the statute (section 558, *supra*) does not require that the defense of the statute of limitations shall be pleaded by way of counterclaim, and therefore that it is not a counterclaim. We do not decide that the allegations of adverse possession found in the answer constitute a counterclaim, although, if true, they not only tend to diminish, but actually defeat, plaintiff's right to recover. We may treat them simply as a statement of new matter constituting a defense to the action.

Section 722 of the Code of Civil Procedure, as amended by Laws of 1899, page 143, reads as follows: "If the plaintiff fails to reply or demur to the counterclaim, the defendant shall be entitled to the same relief as a plaintiff upon the failure of defendant to demur or answer to the complaint. If the answer contains new matter and the plaintiff fails to reply or demur thereto within the time allowed by law, the defendant may move, on notice, for such judgment as he may be entitled to upon such statement, and the court may thereupon render judgment or order a reference or assessment for damages by jury as the case may require." In this case the defendant moved for judgment. The court was authorized to enter such judgment as defendant was entitled to upon "such statement." "Such statement" means the statement of the new matter relied upon as constituting a defense. The legislature did not say the defendant should have such judgment as he was entitled to upon such statement qualified or limited by the allegations of the complaint, but upon the statement of new matter pleaded. This being so, the trial court had no authority to look to the complaint for any purpose, but was confined to the allegations of new matter, which the plaintiff, by failure to reply, admitted to be true.

It may, we think, be logically said that the plaintiff, by failing to file a reply, waived the allegations of its complaint. We think it may also be said that those allegations of the so-called counterclaim which relate to defendant's continued use of the water were in effect new matter, relating to defendant's claim of adverse use, rather than to plaintiff's rights by appropriation. We therefore decide that the district court properly granted the defendant's motion for judgment. The allegations of adverse use, being admitted, constituted a complete defense to the action.

The attorney general contends that, if the allegations we are discussing amount to a counterclaim, they should have been separately stated and numbered and complete in themselves. We think the allegations, treated as new matter constituting a defense, are complete in themselves. The other points were waived by failure to raise them in the court below.

It will be noted that in paragraph 3 of the new matter it is alleged that the grantor of the defendant began the diversion of water on "the thirteenth day of April, 1901." The attorney general therefore urges that the court should have refused to enter judgment on the pleadings for that reason. A reference to the subsequent allegations clearly shows that the substitution of "1901" for "1891" was an error, probably of a stenographer. It is apparent that the date of the alleged appropriation was April 13, 1891, and the court below properly so treated the allegation of paragraph 3.

The second specification of error set forth by the appellant is that the court erred in denying the motion to set aside the default. We are not prepared to say, in the light of the amendment to section 722 of the Code of Civil Procedure, *supra,* that the court should have entered a technical default for want of a reply to new matter. The statute does not, in terms, provide for such practice. However, the question may be considered in connection with the action of the court in ordering judgment on the pleadings.

The affidavits of the assistant attorney general and the county attorney show that each relied upon the other to attend to the

case. The complaint was prepared by the attorney general, and signed by him as one of the attorneys for the plaintiff. It is claimed that he was justified in believing that counsel for respondent had served his answer upon the county attorney, who resided in the same town with the defendant's attorney, and that the county attorney was justified in believing that a copy of the answer would be served upon him. When the attorney general signs his name to a complaint in a civil action in behalf of the state, it is proper to serve subsequent pleadings upon him, regardless of what the duties of the county attorney are in the premises. We think no sufficient showing was made to warrant the district court in formally setting aside the default, especially in view of the fact that no reply was ever tendered, although the court had the motions of the respective parties under advisement for over five months.

The last contention of the state is that the court erred in entering a judgment on the pleadings without proof. What we have heretofore said is applicable, in part, to this assignment. The allegations of new matter were admitted—admitted *in toto* —exactly as pleaded, without reference to the complaint. It was the duty of the court to entertain the motion and either render judgment or order a reference or assessment of damages. (*State ex rel. Montana Central Ry. Co.* v. *District Court,* 32 Mont. 37, 79 Pac. 546.) The plaintiff first claimed all of the waters of the creek, "being about 60 inches." The defendant alleged that he had appropriated "all of the waters of said Spring creek, being about 50 inches," and that he had acquired a right by adverse user to "the whole of the waters of Spring creek." Plaintiff, by failure to reply to the latter allegation, admitted that defendant was entitled to the use of all the waters.

The respondent contends that we have no legislation enabling the state to acquire a water right by appropriation, and that therefore the complaint does not state a cause of action; but, in view of what has already been said, it will be seen that the question cannot properly be decided now.

The judgment is not, however, technically correct, because it adjudges to the defendant a water right by appropriation, and not by prescription. Defendant's allegations concerning an appropriation, as such, were put in issue by the complaint, because defendant claimed an appropriation of dates subsequent to that claimed by the plaintiff. We do not know that a modification of the judgment will avail the plaintiff; but, lest some question of *res adjudicata* may hereafter arise, it is ordered that the cause be remanded to the district court of Gallatin county, with instructions to modify the judgment so as to show that the defendant's right was acquired by adverse possession, and not by appropriation, and, as so modified, the judgment will stand affirmed.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.