## SHEARER v. HUTTERISCHE BRUDER GEMEINDE.

Right to flood another's land is an easement, acquisition of which by prescription requires, among other things, continuous enjoyment for the period of the statute of limitations governing actions to recover land, and the rule applies to the raising of a dam or enlargement of such easement.

Under Code Civ. Proc. §§ 43, 44, requiring actions relating to land to be brought within twenty years, the maintenance of flashboards on a dam for six years in such manner as to extend the scope of land flooded by the dam is insufficient to show a prescriptive right to maintain the flashboards.

Findings based on conflicting evidence cannot be disturbed on appeal.

"Laches," unlike limitation, does not depend upon time, but principally on the inequity of permitting the claim to be enforced; an inequity founded upon some change in the condition, or the relations of the property or the parties, and in legal significance constitutes not mere delay, but delay that works a disadvantage to another; and whether it exists in a particular case is a question addressed to the sound discretion of the court, depending upon all the surrounding facts.

That a riparian owner permitted defendant to maintain flashboards on a dam for six years does not show laches barring her right to enjoin their further maintenance; defendant having sustained no injury through plaintiff's silence.

(Opinion filed, January 17, 1912.)

Appeal from Circuit Court, Hutchinson County. Hon. R. B. Tripp, Judge.

Action by Martha Shearer against the Hutterische Bruder Gemeinde. Judgment for plaintiff, and defendant appeals. Affirmed.

*N. J. Cramer* and *F. B. Wicks,* for appellant.   *E. E. Wagner* and *W. E. Van Demark,* for respondent.

HANEY, J.   This is an action brought by the owner of land riparian to Dakota (commonly called "James" or "Jim") river, in Hutchinson county, to restrain the defendant from obstructing the natural flow of that stream and to recover damages caused by defendant's milldam, located below the plaintiff's land.   The learned trial court, holding that the plaintiff's claim for damages was barred by the limitation prescribed in section 857, Revised Code Civil Procedure, and that the defendant possessed the right, by prescription, to maintain its dam as originally constructed in 1875, entered a judgment wherein it is adjudged and decreed "that the dam heretofore constructed and now maintained by the defendant, its grantors and predecessors, across the James river, in South Dakota, at a place commonly designated as Milltown, * * * be, by the defendant, reduced, lowered, and removed to an elevation or level not exceeding six feet in height from the bottom of the old flume or old wheelhouse floor as originally located and now existing on the west side of the said James river, at the location described above, intending hereby that everything in the nature of 'flashboards' that are now or heretofore have been used upon said dam shall be and continue to be removed therefrom, and the defendant is hereby ordered, commanded, and enjoined to reduce and lower said dam the full length thereof across said James river to an elevation not exceeding six feet in height from the bottom of the old flume or old wheelhouse floor as aforesaid, and to remove from said dam the full length thereof all material of every description whatsoever above said elevation of six feet from the bottom of the old flume or old wheelhouse floor as aforesaid, at the point of construction thereof, so as to be level across said river at an elevation of six feet from the bottom of the old flume or old wheelhouse floor so that the same shall not in any manner form an obstruction or retard the natural flow of water in said James river above said elevation of six feet from the bottom of the old flume or old wheelhouse floor; * * * that the defendant be, and it is hereby, forever enjoined and restrained

from erecting or maintaining a dam at the said point on the said stream higher than six feet from the bottom of the said old flume or wheelhouse floor therein or across said James river at the location of the dam aforesaid, and from repairing or adding to the said dam already erected at said point, so as to increase or raise the top elevation of said dam to a greater .height than six feet from the bottom of the old flume or old wheelhouse floor as aforesaid." Defendant's application for a new trial having been denied, this appeal was taken.

[1] The plaintiff alleges, in effect, that defendant's dam was originally constructed without right or authority; that it was raised in 1904, without right or authority; and that her land has been and is being injured by reason of defendant's obstruction to the natural flow of the stream. The answer, in effect, alleges that defendant's dam was constructed by its predecessor in 1875; that it has never been raised; that it has been maintained as originally constructed for more than 20 years; and that the plaintiff is precluded by her laches from disputing defendant's right to continue to so maintain it. All the material issues, except as to the raising of the dam, having been determined in favor of the defendant, its right to maintain its dam at an elevation exceeding six feet from the point designated in the decree alone requires attention. The right so to do was not acquired by grant or by proceedings under the statute relating to milldams and mills. Rev. Code Civ. Proc. §§ 841-862. The right of flooding another's land is an easement, the acquisition of which, by prescription, requires, inter alia, continuous enjoyment for the period of the statute of limitations governing actions for the recovery of real property, which, in this state, is 20 years. Rev. Civ. Code, §§ 267, 898; Rev. Code Civ. Proc. §§ 43, 44, 49; Wiel Water Rights (3d Ed.) §§ 582, 583; Haight v. Price, 21 N. Y. 241; Mason v. Yearwood, 58 Wash. 276, 108 Pac. 608, 30 L. R. A. (N. S.) 1158; State v. Quantic, 37 Mont. 32, 54, 94 Pac. 491. The same rule applies to the raising of a dam or enlargement of an easement. "Where the reason is the same, the rule should be the same." Rev. Code Civ. Proc. § 858; Rev. Civ. Code, § 2410; State v. Quantic, supra.

[2, 3] The trial court found "that the said dam, as originally constructed, was about six feet high, and upon it, at times when the water in the river was low, 'flashboards,' consisting of planks six, eight, ten, and twelve inches in width, were placed; that in the spring, or when the water was high, or at times when the mill was not being used, the boards were removed; * * * that prior to 1904 plaintiff had broken up about 20 acres of said lot and brought it under cultivation, and raised crops thereon, and found no trouble from the high water until said repairs, reinforcement, and raising of said dam in 1904, and that from that time the water has been set back upon and been caused to soak into her said lot, so as to destroy the crops, native trees, and the destruction of the land for agricultural purposes; that since said time the water in the river above the dam has been materially higher and several rods wider; that there has been also a greater volume of water in the river since 1904, and a few years immediately prior thereto, but just the exact amount of increase the evidence does not definitely disclose; that it does not appear from the evidence that the dam, prior to 1904, set the water back onto or caused it to overflow plaintiff's lot, or soak therein to such an extent as it has since the said repairing, reinforcement, and raising of the dam in 1904, and the use of 'flashboards' thereon; that the said original dam was built of stones, logs, timbers, planks, gravel, and earth, and is, and has been, a permanent obstruction in said river since its original construction, except when the same or parts thereof were temporarily taken out by floods, as above stated, but the said 'flashboards,' used as above referred to, have not been continuous or permanent obstructions in connection with said dam, nor have they, when used, been equal in width, so that the influence of their use upon the dam (which has been injurious to plaintiff's property in setting the water back) has been regular and constant for a continuous period of even 10 years; that the maintenance of said dam with said 'flashboards' would injuriously affect several thousand acres of agricultural lands in the 'Jim River Valley,' similarly situated as said lot 9." The evidence being conflicting, these findings cannot be disturbed. It must therefore be considered for the purposes of this appeal that there was a substantial enlarge-

ment of the easement in 1904. This action was commenced March 30, 1910. Upon the facts found by the trial court, it did not err in concluding that the defendant was without prescriptive right to maintain its dam at an elevation exceeding that of its original construction.

[4, 5] The following findings of fact are as favorable to the defendant as the evidence would justify: "That plaintiff has lived upon an 80-acre tract of land adjoining her said lot 9 since 1876, except one year when she resided at Milltown, near said dam; that she acquired title to said lot 9 by deed in November, 1890; that her predecessor in interest of said lot filed upon and entered the same as a timber culture 'claim' in 1878; that he thereafter made his proof and acquired his patent title from the general government and thereafter conveyed the same to this plaintiff; that the said Daniel Shearer, who constructed, built, and maintained said farm [dam], as well also the said Peter Shearer, who afterwards became interested therein, were brothers-in-law of this plaintiff, and she knew of the construction and maintenance of said dam and the uses and purposes for which it was employed, also knew of the construction, maintenance, and operation of said mill by means of the power created by said dam, and never made any protest, objection, or complaint respecting the maintenance of the dam until shortly prior to the commencement of this action. But the evidence does not disclose that the plaintiff or her predecessor in interest of said lot, has done, or omitted to do, anything with an intention of influencing the conduct of defendant or its predecessors in interest respecting the maintenance of said dam which is inconsistent with its being an existing and continuing injury to her property. The evidence does not disclose more than omission on her part to commence legal proceedings prior to the institution of this suit."

Laches is not, like limitation, a mere matter of time, but principally a question of the inequity in permitting the claim to be enforced, an inequity founded upon some change in the conditions, or the relations of the property or the parties. "Laches," in

legal significance, is not mere delay, but delay that works a disadvantage to another. So long as persons are in the same condition, it matters little whether one presses a right promptly or slowly within the limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other person has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes, but when a court sees negligence on one side, and injury therefrom on the other, it is a ground for denial of relief. What would be laches in one case might not constitute such in another. The question is one addressed to the sound discretion of the court, depending upon all the facts of the particular case. 5 Words & Phrases, 3969 et seq. Assuming circumstances might arise where one obstructs the natural flow of a definite stream, thereby invading the rights of another riparian proprietor, where private property is taken or damaged without the owner's consent and without compensation, which would justify a court of equity in refusing relief because of delay short of the period prescribed by the proper statute of limitations, this is not such a case. Conceding, without deciding, that it would be inequitable for the plaintiff to now object to defendant's dam as originally constructed, it does not follow that she should be denied equitable relief so far as it relates to the unauthorized enlargement of defendant's easement in 1904. All of defendant's improvements were made before that date. While the use of the "flashboard" described in the evidence would necessarily affect the natural flow of the stream, the cost of placing or removing such board merits no consideration in this connection. Such board cannot be regarded as a valuable, permanent improvement. The trial court afforded the defendant an opportunity to comply with the statute—to do what it should have done when its easement was enlarged. The fact that the plaintiff did not object to defendant's dam as originally constructed did not justify the inference that she would not object to its being raised. From 1904 to the com-

.mencement of this action defendant was invading plaintiff's rights. Her silence did not cause it to alter its situation, did not justify it in ignoring the provisions of the statute. During that period the defendant was in the wrong, the plaintiff was doing no wrong, was disregarding no legal duty. It was defendant's duty in 1904 to secure the right to enlarge its easement in the manner prescribed by the statute. That duty continued until this action was commenced. The plaintiff's silence did not prevent the defendant from proceeding lawfully. Because she suffered the continuing trespass, the continuing invasion of her rights for six years is not in itself a sufficient reason for denying her the equitable relief granted by the trial court. It would have been an abuse of discretion to have denied such relief. The plaintiff knew of the trespass and was silent; that is all the evidence discloses. Her silence did not injure the defendant. It did not deprive the defendant of any right. It did not induce the defendant to part with anything of value. The defendant, acting unlawfully and without color of right, is not in position to invoke the doctrine of laches It has shown no reason why it would be inequitable for the plaintiff to assert her unquestioned legal rights in this action.

The judgment of the circuit court is affirmed.

SMITH, J., taking no part in the decision.