DAVID HAGGERTY, *et ux*, Appellant, v. GEORGE L. BROWER, *et al.*, Appellants.

**Deed as Mortgage:** EVIDENCE. On making a loan of three thousand dollars, the lender took a three thousand dollar mortgage to a third person, and a real estate and chattel mortgage to secure six hundred dollars, and a deed to himself, without assuming the three thousand dollar mortgage; and he testified that the grantor had called on him for a loan, was unwilling to allow a mortgage on his land to be foreclosed, and insisted on the lender's paying off the debt and taking a deed, giving him one year in which to repurchase. The grantor was unable to read or write, and testified that the deed was given only as security, and he was corroborated by members of his family. *Held*, that the deed should operate as a mortgage.

EVIDENCE. Evidence that the grantor in a deed absolute on its face, but claimed by him to have been given to secure a debt, leased the premises from the grantee tends to show that the latter owned the land but is not conclusive on that point.

DEFEASANCE. The title of the grantee in a deed subject to a defeasance becomes absolute if by agreement the defeasance is cancelled or surrendered.

**Homestead Right:** EVIDENCE. A wife, unable to read or write, ignorant of her rights, and acting under a belief that the grantee in a deed given to secure a debt, had absolute right to her property, and not knowing that her husband had accepted a lease from him, asked him to build a new house on the land. *Held*, not to preclude her from setting up a claim of homestead.

SAME. A conveyance of a homestead by both husband and wife by a deed, absolute on its face, but intended only to secure a debt, does not destroy the homestead character of the land conveyed, and the wife cannot be deprived of her homestead right therein by a subsequent release of his right to redeem, executed by the husband alone.

**Maxims.** Once a mortgage always a mortgage—Exceptions.

**Appeal.** On appeal from a judgment decreeing that defendant is absolute owner of certain land, in an action by plaintiff to have a deed absolute on its face declared a mortgage, the supreme court may, where it decides that plaintiff has a right to redeem, and is

7   unable from the record to state the account correctly and specifically, state such account as far as possible and then remand the cause for further action by the trial court.

*Appeal from Pocahontas District Court.*—Hon. Lot Thomas, Judge.

Friday, May 13, 1898.

Plaintiff seeks in this action to have a deed executed by himself and wife to defendant declared a mortgage. Defendant filed a cross bill, making plaintiff's wife also a defendant therein, and prayed that he be decreed the absolute owner of the real estate in question, and that his title thereto be quieted. Plaintiff's wife, by pleading filed, sets up a right of homestead. There was a trial to the court, and a decree in defendant's favor. Plaintiff and his wife appeal.—*Reversed.*

*Geo. Heald* and *Frank Farrell* for appellants.

*Stevenson & Lavender* for appellee.

WATERMAN, J.—Plaintiff owned and resided upon a farm of two hundred and forty acres in Pocahontas county, this state. He was considerably embarrassed financially, and desiring to make a loan on his farm, in order to obtain time in which to pay what he was owing, he sent for defendant, who was a loan broker, and whose assistance he desired in arranging his affairs.

1   In response to the call, defendant went to plaintiff's residence. After some talk it was found that plaintiff needed about three thousand, six hundred dollars to clear up his outstanding indebtedness. This was more than defendant thought the land would bear. Defendant was not loaning his own money, but was procuring funds for farm loans from others. After some talk, it was agreed that plaintiff and his wife should

make a mortgage for three thousand dollars to one Kiene, a second mortgage for six hundred dollars to defendant, a chattel mortgage (also to defendant) to further secure the said six hundred dollars, and also give the deed in question. These instruments were all executed and delivered. Defendant procured the money, and paid off the indebtedness of plaintiff, which amounted to something more than three thousand, six hundred dollars. Plaintiff thereafter gave his note to defendant for the excess. The facts so far stated are not in dispute. The contention arises on the question of how it came that the deed was given defendant. Plaintiff's claim is that the deed was made only as additional security for the loan, while defendant insists that it was an absolute sale. He admits that he gave plaintiff one year in which to repurchase the premises, but says that the right to take advantage of this was lost by a failure to exercise it within the time given, and therefore he is now the unqualified owner of said land. The transactions spoken of took place in March, 1890; and in March, 1891, plaintiff leased the land from defendant at an annual rental of three hundred and ninety dollars. Leases were also taken by plaintiff for the years 1892 and 1893, respectively.

II.   We will first consider the testimony relating to the deed: To establish its character as a mortgage, the evidence must be clear, satisfactory, and convincing. The fact that plaintiff leased the premises of defendant tends to show that the latter was the owner, but it is not conclusive. *Rogers v. Davis*, 91 Iowa, 730. Plaintiff was an ignorant man, unable either to read or write; and he claims that he took the lease under a misapprehension of his rights caused by statements of defendant. On the other hand, we think the testimony of defendant, alone, is sufficient to

show that he took the title to this poperty only as security for the money advanced. He testifies that he called upon plaintiff to make him a loan. No other purpose was contemplated by either party. And he says that when he ascertained the amount of plaintiff's indebtedness, a part of which was secured by mortgage on the land, he at first declined to make the loan. He told plaintiff to let the mortgagee foreclose. Repeating his words, "I said to him, 'Your land will be well enough sold if they foreclose, and you will have a year's possession.'" But he says further that plaintiff did not wish to have a foreclosure, and insisted that defendant take a deed for the land, and pay the debts, and give plaintiff one year's time in which to re-purchase. Inasmuch as plaintiff was getting nothing for himself out of the land, in the sale to defendant, it seems somewhat strange that he should be solicitous for that method of paying his debts, rather than through foreclosure proceedings. But another circumstance admitted by defendant seems conclusive of the character of this transaction. At the time he took the two mortgages on the land, and the deed, he took also from plaintiff and his wife a chattel mortgage on four horses and eight cows, to secure a note of six hundred dollars, payable to defendant's order, and which note had upon it a pencil memorandum that it was collateral security for the real estate mortgage of six hundred dollars. If this deed canceled plaintiff's indebtedness, as claimed by defendant, why was the chattel mortgage taken? Nor can we understand why the two real estate mortgages were executed, if the lands were sold to defendant. The six hundred dollar mortgage was made to defendant, and, as part of the same transaction, he claims the land was sold to him. The three thousand dollar mortgage was made to one Kiene. Defendant

did not assume its payment, in the deed, nor even take the land subject to it. Plaintiff is still liable on the three thousand dollar note. According to defendant, plaintiff gave him the land in consideration of the payment of his indebtedness, and yet continued liable, and is to-day, for three thousand dollars of the amount. There is no reasonable explanation of these facts on defendant's theory that the deed was an absolute conveyance. The plaintiff testifies most positively that the deed was given only as security. He is corroborated by members of his family. This evidence, taken in connection with the circumstances to which we have just called attention, settles the question in plaintiff's favor.

III. But defendant claims that, if the deed is held to be a mortgage, the fact will not avail plaintiff, because he has surrendered his right to redeem. It seems that in October, 1891, which was after plaintiff leased the premises, the defendant delivered, and plaintiff accepted, the note for six hundred dollars, secured by the second mortgage, and the note for the excess over three thousand, six hundred dollars paid by defendant. It is not clear from the abstract, but we may assume that the note secured by the chattel mortgage was also surrendered. It is difficult to get at some of the facts very exactly. Some of these notes may have been delivered to plaintiff in March, 1891, but it is certain that part of them were held by defendant until October of that year. It appears, however, that all of the notes which were given, except the three thousand dollar note to Kiene, were surrendered to plaintiff, and accepted by him. According to plaintiff's testimony, the deed was given as security for the amount in excess of three thousand dollars which should be found necessary to pay his then existing debts. While fraud is charged in obtaining this deed, there is no evidence

of it.   Plaintiff and his wife testify to its execution and delivery.   We have found that the deed was subject to a defeasance.   The general rule of law in such cases is that if, by agreement, the defeasance is canceled or surrendered, the title of the grantee in the deed becomes absolute.   *Vennum v. Babcock*, 13 Iowa, 194; *Trull v. Skinner*, 17 Pick. 213; 1 Jones, Mortgages, section 338.   Such a case is an exception to the maxim, "Once a mortgage, always a mortgage."   1 Jones, Mortgages, secton 340.   When plaintiff accepted the return of his notes, and consented to the cancellation of his indebtedness to defendant, it is said, the deed in queston became an absolute conveyance, so far, at least, as plaintiff is concerned; and this, perhaps, would be true, if his right alone was in issue.   But it is urged by appellants that the land conveyed included the homestead, and that plaintiff's release of his right to redeem, however it might affect him, could not bar the claim of the wife, and that she is a party to this action, asking affirmative relief.   Contrary, we believe to the general rule, it is held in this state that a deed absolute in form, but made as security for a debt, vests the legal title in the grantee.   *Burdick v. Wentworth*, 42 Iowa, 440; *Richards v. Crawford*, 50 Iowa, 494.   And yet we hold in *McClure v. Braniff*, 75 Iowa, 38, that a conveyance of the homestead by a deed absolute on its face, but which is intended only to secure a debt, does not destroy the homestead character.   Following the rule of this last case, we must hold here that the wife's right is no more barred in this case than it would be under a statutory mortgage if the husband, for a consideration relinquished his right to redeem.   As having some bearing on the point under discussion, we cite *Beedle v. Cowley*, 85 Iowa, 540; *Morris v. Sargent*, 18 Iowa, 90; *McHugh v. Smiley*, 17 Neb. 620 (20 N. W. Rep. 296; 24 N. W. Rep.

277).    There is some evidence tending to show that the wife on one occasion, after the execution of this deed, asked defendant to build a new house on the farm. This, we suppose, was intended to appear as an acknowledgment of the conveyance of title.    Mrs. Haggerty, like her husband, was unable to read or write.    Both were quite ignorant of their rights.    After the lapse of some time, when Haggerty was unable to make payments on his indebtedness, and defendant claimed title, both husband and wife seem to have thought his claim was well founded.    If the wife's request for a new building was made at this time, when she was laboring under this misapprehension, it is entitled to no weight against her.    It does not appear that she ever consented to, or, indeed, knew of, her husband taking a lease from Brower.

From what we have said, it is apparent that plaintiff and his wife have a right to redeem from the claim of defendant.    We are not able, from the record, to state the account accurately and specifically. We shall do so as far as we can, and then remand the case for further action in this respect, by the trial court.    Although this is an equitable action, we have authority for this proceeding.    *White v. Farlie*, 67 Iowa, 628.    Defendant, Brower, will be entitled to credit for six hundred dollars, with interest thereon at ten per cent. from March 4, 1890, as represented by the two notes of three hundred dollars each.    To eighty-six dollars and thirty-five cents with ten per cent. interest thereon from August 6, 1890, evidenced by the note given for the amount in excess of three thousand six hundred dollars disbursed by defendant for plaintiff's benefit.    To taxes paid as follows:    Forty-eight dollars and ninety-four cents paid December 7, 1891; forty dollars and twenty-six cents paid September 30, 1892; thirty-five dollars and eighteen

cents paid March 28, 1894; thirty-six dollars and seventy-seven cents paid March 21, 1893; fourteen dollars and eighty-three cents paid September 19, 1893. On these amounts he is entitled to interest at six per cent. from date of payment. He should also have credit for amounts paid on the three thousand dollar mortgage, which seem, in the aggregate, to be one thousand and fifty dollars. On this amount interest should be calculated at the rate of six per cent. per annum from the dates of payment, which dates we are unable to find. Defendant should be charged with the rents received from Haggerty. The rent reserved was three hundred and ninety dollars per annum. It was paid for two years in full, and in part for the third year. We are not able to say, from the record, just the amount paid on the last lease, and it does not appear when these payments were made. Brower should be charged with interest on these amounts, from the dates when he received them, at the rate of six per cent. per annum. Taking the total of Brower's credits, and deducting therefrom the amounts which we have indicated as a charge against him, and the remainder will be the sum to be paid by plaintiff to effect a redemption. This redemption, we think, should be made within ninety days from the date of entering the decree herein. If default is made in so doing, such right will be barred.— REVERSED.