HARRINGTON, ADMR., APPELLANT, *v.* BUTTE & SUPERIOR COPPER CO., LIMITED, ET AL., RESPONDENTS.

(No. 3,631.)

(Submitted March 24, 1916.   Decided April 25, 1916.)

[157 Pac. 181.]

*Real Property—Deeds Absolute—Mortgages—Evidence—Insufficiency—Estoppel—Laches.*

Real Property—Deed Absolute—Mortgage—Evidence—Insufficiency.
   1.   In an action to have a deed absolute declared a mortgage, evidence *held* insufficient to meet the requirement of the rule under which the proof must be clear and convincing to warrant relief.

   [As to deed absolute in form as mortgage, see note in 129 Am. St. Rep. 1137.]

Same—"Once a Mortgage, Always a Mortgage."
   2.   The rule of the maxim, "once a mortgage, always a mortgage," has application only to cases in which relief is sought by the mortgagor against the mortgagee himself or his grantee with notice.

Same—Title—Estoppel.
   3.   Where a mortgage is in the form of a deed absolute, and there is no written defeasance of record, one who becomes a grantee of the mortgagee without notice of the fact that the deed was intended as a mortgage, acquires title fee from the lien, and the mortgagor is estopped by the deed from questioning the purchaser's title.

----

Authorities on the question, does a deed absolute on its fact but intended as a mortgage, convey legal title, are gathered in a note in 11 L. R. A. (n. s.) 209.

A valuable note on the question of parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage or pledge, will be found in L. R. A. 1916B, 18.

Same—Laches.

4. Where plaintiff, in an action to have a deed absolute in form decreed a mortgage, did not make any claim to the property for more than twenty-one years after the date of the instrument and until the only person conversant with the facts had died, his claim was barred by laches.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Thomas J. Harrington, administrator of the estate of George W. Newkirk, deceased, against the Butte & Superior Copper Company, Limited, a corporation, and others. From a judgment for defendants and an order denying new trial, plaintiff appeals. Affirmed.

*Messrs. Maury, Templeman & Davies* and *Mr. James H. Baldwin,* for Appellant, submitted a brief and one in reply to that of Respondents; *Mr. J. L. Templeman* and *Mr. D. Baldwin* argued the cause orally.

"A party having an interest in property subject to a lien has a right to redeem it from the lien at any time after the claim is due and before his right of redemption is foreclosed." (Sec. 5723, Rev. Codes; *Grogan* v. *Valley Trading Co.,* 30 Mont. 229, 76 Pac. 211.) "It is a maxim of law that, 'Once a mortgage, always a mortgage,' and the right of the mortgagor can only be extinguished by regular foreclosure and sale." (*Grover* v. *Hawthorne Estate,* 62 Or. 77, 114 Pac. 472, 121 Pac. 808.) "The right to redeem is favored by courts of equity, and it will not be allowed to be taken away except upon a strict compliance with the steps necessary to divest it." (*Caro* v. *Wollenberg,* 68 Or. 420, 136 Pac. 866, 869; *Beverly* v. *Davis,* 79 Wash. 537, 140 Pac. 696, 698; *Grover* v. *Hawthorne Estate,* 62 Or. 77, 114 Pac. 472, 121 Pac. 808, 814; *Fee* v. *Swingly,* 6 Mont. 596, 13 Pac. 375, 376.)

Appellant's right is not barred by laches. The doctrine of laches is based upon equitable estoppel. (*Conaway* v. *Co-operative Home Builders,* 65 Wash. 39, 117 Pac. 716, 719.) It is not designed to punish a plaintiff. It can be invoked only where to allow the claim would be, because of claimant's act, to permit

an unwarranted injustice. It looks to the peace of society and not to the punishment of the claimant, even if he has been negligent. Whether or not the doctrine applies depends upon the circumstances of each case. (*Hovey* v. *Bradbury,* 112 Cal. 620, 44 Pac. 1077; *Hudson* v. *Herman,* 81 Kan. 627, 107 Pac. 35.) It is never invoked in aid of a party where the equities are not in his favor. (*Harris* v. *Defenbaugh,* 82 Kan. 765, 109 Pac. 681, 683; *Hovey* v. *Bradbury,* 112 Cal. 620, 44 Pac. 1077.) Or in favor of one who has not altered his condition. (*Parks* v. *Roth,* 25 Colo. App. 296, 137 Pac. 76, 78.)

Prejudice must be shown. Mere delay is not of itself laches, but delay that has worked an injury to another. (*Willis* v. *Nehalem Coal Co.,* 52 Or. 70, 96 Pac. 528; *Just* v. *Idaho Canal etc. Co.,* 16 Idaho, 639, 133 Am. St. Rep. 140, 102 Pac. 381.) No such showing was made. Laches will not be imputed from delay alone. (*Parchen* v. *Chessman,* 49 Mont. 326, 340, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469; *Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968.)

Respondents and their alleged predecessors in interest are presumed to know the law and to know that an attempted transfer of the property here in controversy under the circumstances disclosed by the record in this case could not pass the title to such property. (*Olson* v. *Stringer,* 60 Wash. 77, 110 Pac. 807; *O'Dell* v. *Montross,* 68 N. Y. 499; *Howe* v. *Carpenter,* 49 Wis. 697, 6 N. W. 357.)

Our contention is, under the circumstances of the evidence, that it was for the Beal heirs to show that the indebtedness and the mortgage securing same referred to in the probate records had reference to some other indebtedness and mortgage than the one in suit, and failing so to do, the trial court should have presumed that the indebtedness and mortgage referred to in the probate reports referred to plaintiff's indebtedness and mortgage in suit, and to nothing else. (*Blackmore* v. *Neale,* 15 Colo. App. 49, 60 Pac. 952; *Morrell* v. *Ferrier,* 7 Colo. 22, 1 Pac. 94; *Shipley* v. *Shilling,* 66 Md. 558, 8 Atl. 355; *Wilcox* v. *Clarke,*

18 R. I. 324, 27 Atl. 219; *Coles* v. *Kelsey,* 2 Tex. 541, 47 Am. Dec. 661.)

*Messrs. Kremer, Sanders & Kremer, Mr. Peter Breen, Mr. H. K. Jones,* and *Mr. John Lindsay,* for Respondents, submitted a brief; *Mr. Louis P. Sanders* and *Mr. Lindsay* argued the cause orally.

Where one appears of record to be the owner in fee of real estate, one alleging the contrary must prove the same by clear and convincing evidence. (*Swain* v. *McMillan,* 30 Mont. 433, 76 Pac. 943; *Mantle* v. *White,* 47 Mont. 234, 245, 132 Pac. 22; *American Min. Co.* v. *Basin & Bay State Min. Co.,* 39 Mont. 476, 24 L. R. A. (n. s.) 305, 104 Pac. 525; *Woods* v. *Jensen,* 130 Cal. 200, 62 Pac. 473; *Falk* v. *Wittram,* 120 Cal. 479, 65 Am. St. Rep. 184, 52 Pac. 707; 27 Cyc. 1025; 8 Ency. of Evidence, 715.) "To convert a deed absolute on its face into a mortgage, the evidence should be clear, convincing and specific; of a character such as will leave in the mind of the chancellor no hesitation or doubt." (*Satterfield* v. *Malone,* 35 Fed. 445, 1 L. R. A. 35.) The courts go further, and hold that the testimony of a single witness is insufficient to overcome the defendant's denial in the absence of fraud or mistake. (*Arnold* v. *Mattison,* 3 Rich. Eq. (S. C.) 153; *Barber* v. *Lafavour,* 176 Pa. St. 331, 35 Atl. 202; *Strong* v. *Strong,* 126 Ill. 301, 18 N. E. 665; *Howland* v. *Blake,* 97 U. S. 624, 24 L. Ed. 1027; *Blake* v. *Taylor,* 142 Ill. 482, 32 N. E. 401.)

"The old oft-quoted legal maxim, 'Once a mortgage, always a mortgage,' is undoubtedly to be read and considered with this limitation, 'Once a mortgage, always a mortgage' until the parties to it agree to treat it differently. But when they agree to treat it differently and do so treat it, it loses its character as a mortgage; one party ceasing so to treat it is not sufficient, but both parties so ceasing to treat it is sufficient no doubt." (*Richmond* v. *Richmond,* 20 Fed. Cas. No. 11,801; *Haggerty* v. *Brower,* 105 Iowa, 395, 75 N. W. 321.) "The doctrine 'Once a mortgage, always a mortgage' does not refer to future con-

tracts." (*Watson* v. *Edwards,* 105 Cal. 70, 38 Pac. 527; 27 Cyc. 974.)

"Where a deed absolute was intended as a mortgage and the party entitled to redeem sells to a third person and directs the holder of the deed to convey the premises to such purchaser, the latter takes title clear of the condition of the defeasance." (*Deadman* v. *Yantis,* 230 Ill. 243, 120 Am. St. Rep. 291, 82 N. E. 592; *Minton* v. *New York El. Ry. Co.,* 130 N. Y. 332, 29 N. E. 319; *Wimmer* v. *Ficklin,* 14 Bush (77 Ky.), 193.)

Many considerations enter into a judicial determination as to whether or not laches may be imputed to a party, such as lapse of time, staleness of the demand, unexplained delay and other facts frequently asserted by courts to be sufficient to deprive a party of the right to relief under the circumstances. (*Hammond* v. *Hopkins,* 143 U. S. 224, 36 L. Ed. 134, 12 Sup. Ct. Rep. 418; *Hough* v. *Coughlan,* 41 Ill. 130; *Brendel* v. *Strobel,* 25 Md. 395; *Walker* v. *Ray,* 111 Ill. 315; *Speidell* v. *Henrici,* 15 Fed. 753.) "Lapse of time, when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquiescence or waiver." (*Kelly* v. *McQuinn,* 42 W. Va. 774, 26 S. E. 517.) "Equity will not assist one who has slept on his rights and shows no excuse for his laches." (*Phillips* v. *Piney Coal & Coke Co.,* 53 W. Va. 543, 97 Am. St. Rep. 1040, 44 S. E. 774.)

In *Spect* v. *Spect,* 88 Cal. 437, 22 Am. St. Rep. 314, 13 L. R. A. 137, 26 Pac. 203, which was an action in ejectment by the successor of the mortgagor against a mortgagee in possession, it was held: "It is a settled rule that a mortgagor cannot maintain ejectment against his mortgagee until the debt is paid." (*Fee* v. *Swingly,* 6 Mont. 596, 13 Pac. 375; *Montgomery* v. *Trumbo,* 126 Ind. 331, 26 N. E. 54; *Post* v. *Bank of Utica,* 7 Hill (N. Y.), 391.)

"The intention of the parties to the deed at the time it was made is controlling. If, after the deed was made and the transaction completed, there existed no indebtedness from the grantor to the grantee on account of the consideration for the deed, it is

not a mortgage." (*Fridley* v. *Somerville,* 60 W. Va. 272, 54 S. E. 502; *Frink* v. *Adams,* 36 N. J. Eq. 485.) Again, it is fundamental in an action of this kind that it is necessary that the appellant establish the fact that the relation of debtor and creditor existed between the parties to the instrument. (*Rankin* v. *Rankin,* 111 Ill. App. 403; *Samuelson* v. *Mickey,* 73 Neb. 852, 103 N. W. 671, 106 N. W. 461; *Jones* v. *Jones,* 20 S. D. 632, 108 N. W. 23.)

"No conveyance absolute on its face can be a mortgage unless made to secure the payment of a debt or the performance of a duty." (*Morrison* v. *Jones,* 31 Mont. 154, 77 Pac. 507.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was originally brought by George W. Newkirk on September 12, 1912. Thereafter he died, and Thomas J. Harrington, his administrator, was substituted as plaintiff in his stead. The defendants, other than John R. Bordeaux and Butte & Superior Copper Company, Limited, are referred to in the pleadings as the heirs of George W. and Sarah J. Beal, husband and wife, both now deceased. What is the relationship of each to the other or to the deceased husband and wife is not important. For convenience, Newkirk will hereafter be referred to as plaintiff, and the Butte & Superior Copper Company, Limited, as the company. The other defendants, except Bordeaux, when reference to them collectively is necessary, will be designated as the defendants Beal. The defendant Bordeaux will be referred to by name.

The complaint herein sets forth the facts upon which plaintiff seeks relief in two counts. The first is in form an action to have a deed absolute, under which the defendants Beal claim title to the property described therein, decreed to be a mortgage, and the plaintiff declared to be entitled to redeem the property upon payment of the debt secured by it. The second is in form an action to quiet title. The case stated in the first count may be summarized as follows: That on June 30, 1890, the plaintiff

was the owner, in possession and entitled to the possession, of an undivided one-sixth interest in the Deadwood quartz lode mining claim situate in Silver Bow county; that he then became indebted to Sarah J. Beal in the sum of $1,000, the indebtedness being evidenced by a promissory note bearing that date; that to secure the payment of this indebtedness he executed and delivered to defendant Bordeaux, a deed which, though absolute in form, was intended by plaintiff, Sarah J. Beal, and defendant Bordeaux, to be a mortgage only, and to serve no other purpose; that the defendants Beal are now the owners of said interest, but subject nevertheless to plaintiff's right as mortgagor; that the company claims a right to and interest therein under a contract between it and the defendants Beal, by the terms of which it is entitled to purchase the said interest from the defendants Beal for the sum of $25,000, payable, $2,500 in cash on August 7, 1912, the date of the execution of the contract, and the balance in specified installments; that prior to the execution of the contract none of the defendants Beal ever claimed to be the owners or encumbrancers of the interest otherwise than subject to the right of plaintiff as mortgagor; that plaintiff has paid a portion of his indebtedness but does not know the amount of it still due; that he is ready and willing to pay the balance when the amount of it shall have been ascertained; and that since the execution of the contract held by the company, the grantors therein—the defendants Beal—have denied and do now deny plaintiff's right, and allege that they have never held the interest otherwise than as owners thereof in fee. The prayer demands that an accounting be directed to ascertain the balance due from plaintiff, and that upon payment of it by plaintiff, the defendants Beal be decreed to convey the interest to him.

The second count alleges that the plaintiff is the owner of the interest, that defendants assert some claim thereto adverse to the plaintiff, and that such claim is without right. The prayer demands that the defendants be required to disclose fully the nature of their claim, and that it be declared without foundation. The answer of defendant Bordeaux admits that on June 30,

1890, the plaintiff was the owner of the property in controversy. He denies all the other material allegations in the first count of the complaint. He alleges affirmatively that prior to June 30, 1890, he had loaned to the plaintiff approximately the sum of $200; that at that time in order to secure payment of the amount, plaintiff executed and delivered to him a deed to the property in question, which, though absolute in form, was intended to be a mortgage only; that the deed was duly recorded on July 2, 1890; that it was understood and agreed between him and the plaintiff, when the deed was executed and delivered, that whenever plaintiff should repay the amount so loaned to him, this defendant would execute to the plaintiff such reconveyance or conveyance as he might request; that on November 12, 1890, the plaintiff having in the meantime discharged the loan, at the request of the plaintiff and in accordance with defendants' agreement, Bordeaux and his wife executed and delivered to plaintiff a deed absolute in form, running to Frank Bateman and his wife, Isadora Bateman, grantees, which was duly recorded on November 21, 1890; and that at no time thereafter did he claim, nor does he now claim, any interest in the property. His answer to the second count is in substance the same.

The company filed a separate answer, which does not require special notice. The interest it claims in the property is as assignee of a contract between defendants Beal and A. B. Wolvin and John M. Hayes, entered into on August 7, 1912, embodying these agreements: The Beals agreed to convey to the latter the property for the sum of $25,000, as stated in the complaint. They were to deposit a deed in the First National Bank of Butte, with instructions for its delivery to Wolvin and Hayes, or their assignee, upon the payment of the agreed price. At the time the contract was executed, the deed was deposited and the cash payment made. When this situation was disclosed at the trial, it was agreed by plaintiff, the company, and the defendants Beal, that in case he should succeed in the action he would be bound by the terms of the contract, that he would accept the balance

of the purchase money due and deposit a deed with the clerk, to take the place of the deed of the defendants Beal when the action should be determined. The cash payment already made was to be accepted by defendants Beal as a discharge of plaintiff's debt. The plaintiff thereupon deposited his deed with the clerk. The company, though represented by counsel, took no further part in the proceedings.

Though Perry H. Beal filed a separate answer, the defenses interposed by all the defendants Beal to both causes of action were in effect the same. These were denials of the material allegations of the complaint, and affirmative defenses which included the statute of limitations, adverse use, laches and estoppel. Upon all of these affirmative defenses there was issue by reply. The court made elaborate findings and conclusions of law in favor of the defendants, and judgment was entered accordingly. The plaintiff has appealed from the judgment and an order denying him a new trial.

In brief, the court found these to be the facts: On June 30, 1890, the plaintiff, being the owner of the property in controversy, executed and delivered to defendant Bordeaux a deed to it, absolute in form, for an ostensible consideration of $1,000. This deed was intended as a mortgage to secure to Bordeaux the payment of about $200 theretofore loaned to plaintiff by him. No other writing was executed, but it was orally agreed that when the debt should be discharged, Bordeaux would execute and deliver to plaintiff such reconveyance or conveyance as plaintiff should request. This deed was recorded two days thereafter. On November 12, 1890, the plaintiff, having discharged his indebtedness to Bordeaux, prepared and presented to him for execution by himself and wife a deed naming Frank Bateman and his wife, Isadora, grantees, and reciting a consideration of $1,000. He informed Bordeaux that he had sold the property to Bateman and desired to have the conveyance made directly to Bateman and wife in order to save the expense of a second deed, which would be necessary should the conveyance be made directly to plaintiff. This deed was thereupon executed by Bor-

deaux and wife and delivered to plaintiff, and by plaintiff to Bateman. It was put upon record on November 21, 1890. On December 22, 1893, Bateman and wife conveyed the property for a consideration of $1 to Louella N. Newkirk, as guardian of the person and estate of Sarah J. Beal, who was then insane. The court found no evidence showing that on June 30, 1890, the plaintiff was indebted to Sarah J. Beal in any sum, or that on that date the plaintiff executed to her a note for $1,000, or any other sum. On December 31, 1890, the plaintiff, together with the defendants George W. and Maybell U. Beal (now Doering), husband and daughter of Sarah J. Beal, executed their joint and several note to Frank Bateman, the guardian of Sarah J. Beal, for the sum of $1,000, payable in installments of $200 per month, with interest at one per cent per month; this being the note referred to in the complaint as the one which the deed to Bordeaux was intended to secure. The court specifically found that the Bordeaux deed was not executed to secure this note, but that the facts in relation to it were as heretofore stated. It found specifically that the transaction between the plaintiff and Bateman and wife was a sale, and that the latter thereby became the owners of the property. It further found that on December 22, 1893, under the conveyance by Bateman and wife to Louella N. Newkirk, the defendants Beal became the owners of the property in controversy, and since that time have claimed to be, and have been, the owners of it, free from any claim thereto by the plaintiff or any other person whomsoever; that none of them had any knowledge of the claim now asserted by the plaintiff until the bringing of this action.

As an aid to an understanding of the references made in the foregoing synopsis to the estate of Sarah J. Beal, these admitted facts are pertinent: The property in controversy was not occupied or worked either by plaintiff or defendants Beal. Who paid the taxes does not appear. When plaintiff executed the deed to Bordeaux, Louella N. Newkirk was his wife and joined him therein. She was divorced from him in December, 1894. At the time of the various transactions recited, Sarah J. Beal

had for several years been insane. Bateman was the guardian of her person and estate until January 23, 1893, when he resigned his office. On January 28 he was succeeded by defendant Louella N. Newkirk, who took her oath of office on that day. She continued thereafter to act as guardian until the death of Sarah J. Beal, which occurred on May 4, 1900. She rendered her final account and was discharged on February 29, 1904. On November 4, 1901, defendant Perry H. Beal was appointed administrator of the estate of Sarah J. Beal. George W. Beal, the husband, died testate on June 8, 1901. Perry H. Beal was appointed executor of his estate on July 8, 1901. It appears only by inference that these estates have been fully administered and distributed. Since no question is made that the defendants Beal, the heirs of the husband and wife, are *prima facie* the owners of the property in controversy, we may assume that distribution has been made. It may be stated, further, that in none of the exhibits of the estate filed in the district court by either guardian, subsequent to the date of the deed to Bateman and wife, during the continuance of the guardianship, was the property in question listed as the property of Sarah J. Beal. Neither did Perry H. Beal as her administrator, nor as the executor of George W. Beal, list it in the inventories of either of the estates, until about the end of his administration, when he listed it as part of the property of the estate of Sarah J. Beal. In the first annual report of Bateman as guardian, subsequent to the execution of the note to him by the plaintiff, no mention is made of a note due from the plaintiff. In subsequent reports, both by him and Louella N. Newkirk, the note signed by plaintiff and George W. and Maybell U. Beal is listed among the assets of the Sarah J. Beal estate. In all the reports of Louella N. Newkirk, subsequent to the one filed by Bateman on November 30, 1892, it is listed with other notes, all of which were executed to the guardian by different members of the Beal family, ostensibly for money of the estate borrowed from the guardian. With reference to them it was reported that they were "secured" or "secured by mortgage." These latter re-

52 Mont.—18

ports were verified by the oath of Louella N. Newkirk. Attached to some of them was a statement in writing signed by one or more of the other members of the Beal family, expressing approval of them. In his testimony, the plaintiff stated that the note due from him was executed for money borrowed from Bateman belonging to the estate of Sarah J. Beal in the hands of Bateman as her guardian. He explained the disparity in the dates of the note and the deed to Bordeaux, by saying that for some reason which he did not at the time of the trial recollect, the money was obtained at the time the deed to Bordeaux was executed, but that the note was not executed until later.

It will be noted that the court found as a fact that the defend-[1] ants Beal became the owners of the property under the deed from Bateman and wife to Louella N. Newkirk, and that they have been claiming to be the owners ever since. This cannot be correct. That deed, executed, as it was, during the lifetime of Sarah J. Beal, vested title *prima facie* in her guardian in trust for her. She was then living, and therefore had no heirs. What the court meant to say, doubtless, was that these defendants became vested with the title upon the death of Sarah J. Beal as her successors by virtue of that deed. Be this as it may, the single finding that the transaction between plaintiff and Bateman was a sale is sufficient to sustain the judgment if it has substantial foundation in the evidence. If that was a sale, plaintiff fully divested himself of title and thereafter had no further interest in the property, no matter how or when or upon what consideration the title thereafter became vested in the defendants Beal. For if Bateman became a purchaser—as the court found—he became vested with the legal title as fully as if Bordeaux had himself been the owner instead of mortgagee. The evidence fully justified the finding of the court that he was a purchaser. The only direct evidence on the subject was that of plaintiff and Bordeaux. The plaintiff testified that he "wished to make a loan from the guardian of Mrs. Sarah J. Beal"; that, being ignorant of the law, he presumed that he had to give a mortgage to someone and have it transferred to the

guardian; that he spoke to Bordeaux about giving him (Bordeaux) an instrument to secure payment of the money; that such an instrument was delivered to Bordeaux; that in the meantime he had a conversation with George W. Beal (the purport of this conversation is not stated) ; and that he expected to get the money from Mrs. Beal through Bateman, the guardian. Being asked to relate the facts of the transaction between himself and Bateman as to the loan, he said: "The conversation was not extensive. It was in a few words requesting of them a loan. * * * The beginning of the transaction was through Bordeaux to secure a loan from the guardian of Mrs. Beal, and in order to do that I gave Mr. Bordeaux a mortgage to secure the payment of this loan." His conversation with Bateman with reference to the matter "was short. I made known to him that I wished to secure this loan and got the money." · He got $800, agreeing to pay the estate $1,000. The note evidencing this indebtedness was the one dated December 31, 1890—not the one described in the complaint. The difference between the $1,000 and the $800 actually received was last seen by him in the hands of George W. Beal. He could not tell why it was retained by Beal or what became of it. He paid $300 on the note in 1891. To secure the loan he gave Bordeaux "a mortgage or deed intended for a mortgage to be transferred to—well, you might say now to the guardian of Mrs. Sarah J. Beal—it would be the estate." This statement had reference to the deed 'of June 30, 1890. He received, he said, no consideration from Bateman or the estate for the making of this instrument. His statement as to the delivery of the deed on November 12, 1890, is: "We [plaintiff and Bordeaux] were together, I think we were together when that deed was delivered to Mr. Bateman—when that mortgage was delivered to Bateman. He was with him [me] at the time, I am pretty positive; I am not quite positive though in regard to that. I think Mr. Bordeaux delivered this deed to me in Mr. Bateman's presence." He failed to state anywhere in his testimony that Bateman did not pay him the consideration recited in the deed, nor that the

transaction was other than it purported to be, *viz.,* a sale. When in addition to the vague and fragmentary character of his story, we note that Bateman and wife (not Bateman, guardian) are named as grantees, that there is a disparity between the date of the deed and the note, that there is a disparity between the date of this note and that alleged in the complaint, that plaintiff never at any time during more than twenty-one years after the date of the deed to Bateman and wife made any claim to the property, which stands as an admitted fact, and that Bateman, the only person who knew all the facts of the transaction, is now dead, the case made upon plaintiff's own testimony is so inherently weak that, standing alone and uncontroverted, it cannot be said that it is as clear and convincing as it must have been, within the rule applicable to this class of cases. (*Gassert* v. *Bogk*, 7 Mont. 585, 1 L. R. A. 240, 19 Pac. 281; *Murray* v. *Butte-Monitor T. Min. Co.,* 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132; *Swain* v. *McMillan,* 30 Mont. 433, 76 Pac. 943; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6.) The inherent improbability of it was such that the court might, without countervailing evidence, have rejected it as unworthy of belief. (*Mattock* v. *Goughnour,* 11 Mont. 265, 28 Pac. 301.) But waiving aside this consideration, the story of Bordeaux, plaintiff's own witness, is in direct conflict with plaintiff's story in every particular, except the fact that the deed to himself was intended as a mortgage. His version of the Bateman transaction was that found by the court. It is corroborated by the recitals of the Bateman deed, by the plaintiff's omission to deny Bordeaux's statement that the transaction was a sale, by his silence as to his receipt of the consideration, as well as by his omission to claim any interest in the property thereafter. It is also controverted by the testimony of Maybell U. Beal who detailed the circumstances out of which the note originated. Her uncontroverted statement was that about the time the note was executed, plaintiff had become indebted in such a way that his failure to make payment would be a source of embarrassment to the Beal family; that this was brought to her knowledge by

her father, with a request that she join him and plaintiff in the note, and thus procure the money needed by plaintiff, and that out of consideration for the family she did so. She never heard of any mortgage security. If this story is true, the debt was incurred more than a month after the deed had been executed and delivered. Upon this condition of the evidence the court was wholly justified in rejecting the evidence of plaintiff. If it be rejected, there is nothing of substantial probative value left in the record to support his claim. It is true the course pursued by both guardians with reference to the property as indicated by their reports seems to be inconsistent with the present attitude of the defendants Beal. For illustration: When Bateman resigned his guardianship he took a receipt from Mrs. Newkirk, his successor. This mentioned the note, but not the property. His conveyance to her was for a consideration of $1. This fact is not anywhere explained. Mrs. Newkirk's memory was wholly at fault; so also was the memory of Mrs. Bateman. The recitals in the report of Mrs. Newkirk as guardian are not explained. All of these matters are of equivocal import, but, in the absence of other explanatory evidence, they furnished a basis for speculation rather than substantial proof upon which a court would not venture to overturn rights which, upon the face of the record evidence of them, are lawfully vested. They do not so connect the note of December 31, 1890, with the deed to Bateman and wife, as that one can say with any certainty that the latter was intended as security for the former. Upon this record, therefore, it cannot be said that the plaintiff has sustained the burden imposed upon him by the rule announced in the cases cited *supra*.

Counsel invoke the rule of the maxim, "Once a mortgage, [2] always a mortgage," and insist that since the conveyance to Bordeaux was admittedly a mortgage, and a mortgage does not convey title but creates merely a chattel interest (*Rader* v. *Ervin*, 1 Mont. 632; *Holland* v. *Board of Commissioners*, 15 Mont. 460, 27 L. R. A. 797, 39 Pac. 575; *Swain* v. *McMillan*, *supra; Cornish* v. *Woolverton*, 32 Mont. 456, 108 Am. St. Rep.

598, 81 Pac. 4; Rev. Codes, secs. 5723, 6877), the Bordeaux-Bateman transaction could not vest title in Bateman and wife, and therefore the defendants Beal could not become vested with it by the conveyance from Bateman. The rule invoked by counsel can have application only to cases in which relief is sought by the mortgagor against the mortgagee himself or his grantee with notice. It is the rule everywhere that when [3] the mortgage is in the form of a deed absolute, and there is no written defeasance of record, one who becomes a grantee of the mortgagee without notice of the fact that the deed was intended as a mortgage, acquires the title free from the lien. Such is the rule declared by section 5750 of the Revised Codes. The underlying principle is that the mortgagor, by making the mortgagee the ostensible owner in fee, arms him with a power of attorney by which he can convey the title, and when he has made a conveyance to a purchaser for value without notice, the mortgagor is fully divested of his title. He is clearly estopped by the deed from questioning the purchaser's title. (16 Cyc. 773, 774; *Deadman* v. *Yantis*, 230 Ill. 243, 120 Am. St. Rep. 291, 82 N. E. 592; *Minton* v. *New York Electric Ry. Co.*, 130 N. Y. 332, 29 N. E. 319; *Wimmer* v. *Ficklin*, 14 Bush (Ky.), 193; Bigelow on Estoppel, 6th ed., 607; Jones on Mortgages, 7th ed., 342d.)

Under the facts disclosed in this case, however, it is not important to inquire what notice Bateman had. If it was the purpose of plaintiff to sell the property to him, and the plaintiff received the consideration from him, it would be permitting plaintiff to perpetrate a palpable fraud, should he be awarded the right to redeem. Upon the assumption that Bateman knew of the condition of the title, the deed was made under the direction of plaintiff. Both he and Bateman treated the deed as vesting the title in Bordeaux. This deed, therefore, lost its character as a mortgage and became a deed absolute in fact. Both treated it as conveying title, and Bateman having presumptively paid the stipulated consideration on the theory that he was obtaining title, the plaintiff cannot now be heard to say

the contrary. (*Richmond* v. *Richmond,* 20 Fed. Cas. No. 11,801; *Haggerty* v. *Brower,* 105 Iowa, 395, 75 N. W. 321; *Watson* v. *Edwards,* 105 Cal. 70, 38 Pac. 527; 27 Cyc. 974.)

The court did not find upon the issue of the statute of limitations. Its conclusion that the evidence was insufficient to war- [4] rant relief was correct. It concluded also that though it be assumed that there was some substantial evidence tending to establish plaintiff's claim, it was barred by his laches. The latter conclusion is fully sustained by the decision in *Riley* v. *Blacker,* 51 Mont. 364, 152 Pac. 758. From this point of view, also, the result was correct. The judgment and order are therefore affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

