VERWOLF, EXECUTOR, APPELLANT, *v.* LOW LINE IRRIGA-
TION CO. ET AL., RESPONDENTS.

(No. 5,478.)

(Submitted May 20, 1924.  Decided June 10, 1924.)

[227 Pac. 68.]

*Waters and Water Rights—Title by Prescription—Laches.*

Water Rights may be Acquired by Prescription.
   1.   The right to the use of water for irrigation or other lawful pur-
poses may be lost by one and acquired by another by prescription.
Same.
   2.   Plaintiff acquired from an irrigation company a tract of land
with a water right not to exceed eighty statutory inches.  The company
subsequently sold its plant to a mutual irrigation company which set
apart eighty of its shares as representing plaintiff's right, each share
entitling its holder to approximately one inch of water, subject
however, to the provision of its by-laws that in case of extreme
drought the company should have the right to prorate the available
supply among all of the shareholders.  With full knowledge of the facts
plaintiff accepted distribution of the water made under this provision
and the company for twelve years prior to the commencement of
plaintiff's action to compel delivery of the maximum amount of eighty
inches of water under his original deed, openly, continuously, ex-
clusively and adversely had possession of the water to the extent
that its use was withheld from plaintiff.  *Held,* under the above rule,
that plaintiff lost and defendant acquired by prescription the right
to the use of the water so withheld.

Real Property—Adverse Possession—Payment of Taxes Required—Statute
not Retroactive.
   3.   Chapter 3, Laws of 1917 (sec. 9024, Rev. Codes 1921), declaring
that adverse possession of real property shall not be deemed estab-
lished unless it shall have been occupied and claimed for a period
of ten years continuously and the party claiming such possession has
paid all taxes levied and assessed upon it, *held* prospective and not
retroactive in its operation.

[70 Mont. 570.]

Water Rights Not Real Property—Adverse Possession—Statute Requiring Payment of Taxes not Applicable.

4.   While a water right partakes of the nature of real estate, it is not such in any sense, and when considered alone and for the purpose of taxation it is personal property; therefore Chapter 3, Laws of 1917, above, which deals with real property and makes payment of taxes a prerequisite to the establishment of a claim of adverse possession to such property, has no application where title by prescription to a water right, independently of the land to which it was appurtenant, is asserted.

Same—Laches.

5.   Where a claimant of a water right of eighty inches under a deed from an irrigation company, for more than ten years without objection permitted its successor, a mutual company, to treat him the same as it treated its shareholders in the distribution of water, by prorating the available supply among them, thus invading his right to the extent of withholding from him frequently as much as twenty-six inches in seasons of drought, and during that time the company had incurred obligations which would be affected adversely by a decree awarding to him the full amount claimed, his laches barred assertion of his original right.

*Appeal from District Court, Gallatin County, in the Ninth Judicial District; W. H. Poorman, a Judge of the First District, presiding.*

SUIT by George Verwolf, as executor of the last will and testament of John Verwolf, deceased, against the Low Line Irrigation Company and others. Judgment for defendants and plaintiff appeals. Affirmed.

*Messrs. Russell, Madeen & Clarke,* for Appellant, submitted a brief; *Mr. Charles A. Russell* argued the cause orally.

Sales of water for irrigation can be made by an irrigation company only up to the capacity of the canal and water supply then available owned by it. A corporation acquiring an irrigation system may not oversell capacity of canal and water supply and thereupon require prior purchasers of water under contract with its predecessor to prorate their right with its stockholders. (*First Trust & Savings Bank* v. *Bitter Root Valley Irr. Co.,* 251 Fed. 320; *Gould* v. *Maricopa Canal Co.,* 8 Ariz. 429, 76 Pac. 598, 1125; *State* v. *Twin Falls L. & W. Co.,* 30 Idaho, 41, 166 Pac. 220; *Gerber* v. *Nampa Meridian Irr. Dist.,* 19 Idaho, 765, 116 Pac. 104; *Bent* v. *Second Extension Water Co.,* 51 Cal. App. 648, 197 Pac. 657; *Franscioni* v.

*Soledad Land & Water Co.,* 170 Cal. 221, 149 Pac. 161; *Fenton* v. *Tri-State Land Co.,* 89 Neb. 479, 131 N. W. 1038; *Prosses* v. *Steamboat Canal Co.,* 37 Nev. 154, 140 Pac. 720; *Erp* v. *Raymond Canal & Mill Co.,* 105 Tex. 161, 146 S. W. 155; *Twin Falls-Oakley L. & W. Co.* v. *Martin,* 271 Fed. 488.)

As to what is adverse possession and the proof requisite to show it we call attention to its following cases: *Smith* v. *Deniff,* 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981; *Featherman* v. *Hennessy,* 42 Mont. 535, 113 Pac. 751; *Lowry* v. *Carrier,* 55 Mont. 392, 177 Pac. 756; *Collins* v. *Thode,* 54 Mont. 405, 170 Pac. 940; *Rude* v. *Marshall,* 54 Mont. 27, 166 Pac. 298.

We further direct the court's attention to the fact that the record in this case is altogether devoid of pleading or proof that defendants, or either of them, have paid the taxes upon the water rights of plaintiff for or during any or either of the years of the period they claim to have held adversely. Under section 9024, Revised Codes of 1921, the payment of taxes is a condition precedent or prerequisite. Similar statutory provisions have been construed and the requirement upheld as essential, in the following cases: *Allen* v. *Allen,* 159 Cal. 197, 113 Pac. 160; *McNoble* v. *Justiano,* 70 Cal. 395, 11 Pac. 742; *Tuffree* v. *Polhemus,* 108 Cal. 670, 41 Pac. 806; *Tuffree* v. *Stearns Ranchos Co.,* 124 Cal. 306, 57 Pac. 69; *Crane* v. *Judge,* 30 Utah, 50, 83 Pac. 566; 1 R. C. L., sec. 12, p. 700.

*Mr. W. S. Hartman,* for Respondent Low Line Irrigation Company, submitted a brief and argued the cause orally.

*Mr. George Y. Patten,* for Respondents Highline Irrigation Company and H. S. Buell Land Company, submitted a brief.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1889 the West Gallatin Irrigation Company was organized to purchase and sell real estate, appropriate water, and sell and lease water rights. It acquired a large amount of land and on May 8, 1890, appropriated 6,800 inches (miner's measurement) of the waters of the West Gallatin River. About

[70 Mont. 570.]

the same time it completed a main canal which tapped the west bank of the river and extended in a general northwesterly direction some forty miles to a point near the town of Manhattan. This canal, with its branches and laterals, constituted the sole distributing system for several years. In November, 1898, the company sold to John Verwolf 160 acres of land and a perpetual water right for the same. In 1901 it completed a second canal, which was intended primarily as a supply system to deliver water to the lower (northerly) portion of the original canal, and about the same time it made an additional appropriation of 5,000 inches of the waters of the West Gallatin River. In October, 1909, it sold all of its water rights, canals, rights of way; etc., to the H. S. Buell Land Company, which latter company thereafter divided the properties into two distinct units. The upper portion of the original canal from the headgate to the point where the supply canal united with it, with its laterals, 3,400 inches of the waters appropriated in 1890, and 3,400 inches of the appropriation of 1901, were constituted one unit, which for convenience is designated the high line system. The supply canal, its laterals, the lower or northerly portion of the original canal, 3,400 inches of the appropriation of 1890, and 1,600 inches of the appropriation of 1901, were constituted the second unit, for convenience called the low line system.

In November, 1909, the H. S. Buell Land Company sold the high line system of the High Line Irrigation Company, and the low line system to the Low Line Irrigation Company, and from that date Verwolf was supplied with water from the low line system exclusively. The Low Line Irrigation Company is a domestic corporation with a capital of $150,000, represented by 7,500 shares of the par value of $20 each. Much of this stock was sold to individuals owning land subject to irrigation from the system, and some of it was exchanged for rights similar to the Verwolf right. Each share of stock was intended to represent the right to the use of approximately one inch of water during the irrigation season, subject to limitations hereafter mentioned.

Since Verwolf is the only user of water from the low line system who is complaining in this action, for the sake of brevity and to avoid confusion he will be treated as the sole user whose right was derived directly from the West Gallatin Irrigation Company, and every other user from that system will be referred to as a stockholder in the Low Line Irrigation Company, whose right is measured by the number of shares of stock owned by him.

In 1914 the Low Line Irrigation Company appropriated 2,500 inches of the waters of West Gallatin River, thus giving it appropriations aggregating 7,500 inches. But many appropriations of water from the same river had been made prior to 1890, so that it occurred frequently, and particularly late in the irrigation season of the year, that the amount of water available to the low line system under its rights was not sufficient to supply to Verwolf the maximum amount mentioned in his deed and at the same time deliver to each stockholder one inch for every share of stock owned by him. Under such circumstances the Low Line Irrigation Company set apart eighty shares of its capital stock to represent the Verwolf right, treated Verwolf as though he were a stockholder owning such eighty shares, and then apportioned the available water supply to him and the other users *pro rata* according to the number of shares held by each. Under this method of distribution Verwolf frequently received not more than fifty-four inches of water, and in 1921 he commenced this action to compel the Low Line Irrigation Company to supply his right to the maximum amount mentioned in his deed before apportioning the remainder of the available supply among the other users from the system. In his complaint he sets forth fully the history of the transactions and states his grievance substantially as set forth above. He joined as defendants the H. S. Buell Land Company and the High Line Irrigation Company, alleging that each claimed some interest adverse to his; but each of these two defendants filed an answer which is, in effect, a disclaimer. The Low Line Irrigation Company denied many of the material allegations of the complaint, alleged that it had delivered to

Verwolf the full amount of water to which he was entitled under his deed, and pleaded three affirmative defenses: Estoppel, prescription and laches. A reply was filed which put in issue all the new matter pleaded in the answer, and upon a trial to the court without a jury findings of fact were made, conclusions of law drawn therefrom and a judgment dismissing the complaint was rendered and entered, from which plaintiff appealed.

John Verwolf died and the executor of his last will was substituted as plaintiff, but for convenience the parties will be referred to as though the change had not been made.

The ultimate question for determination may be stated as follows: Can Verwolf be required to accept a *pro rata* diminution of the maximum quantity of water mentioned in his deed from the West Gallatin Irrigation Company in order that stockholders in the Low Line Irrigation Company may receive a like *pro rata* distribution of water whenever the quantity of water available to the Low Line Irrigation Company is not sufficient to supply all such rights in full?

The deed from the West Gallatin Irrigation Company conveyed to Verwolf 160 acres of land particularly described, and also "the right to water for use on the above-described parcel of land, which right to water it is hereby provided shall be subject forever to the following terms and conditions:   *   *   *

"(4) Said right to water shall not entitle the holder or holders thereof to any water except during the irrigating season, or to a greater flow of water at any time than eighty statutory inches, or to a greater quantity at any time for irrigation of the above-described parcel of land than shall be needed for the production of good average crops under skillful irrigation and cultivation upon such portion of the above-described parcel of land as shall be for the time being under cultivation. * * *

"(7) The party of the first part [West Gallatin Irrigation Company], its successors or assigns, shall not be liable in any way for any deficiency in the supply of water supplied as aforesaid due to drought, casual, unforeseen, or unavoidable ac-

cident, the act of God, or other cause or causes beyond its and their control.

"(8) In case, for any reason, the supply of water shall be insufficient to fill and flow through the canal of the party of the first part according to its estimated capacity, or if, for any reason, the supply of water shall be insufficient to supply the holders of rights to water then outstanding with the amount needed by them, and which but for such insufficiency they would be entitled to receive from the party of the first part, its successors or assigns, the said party of the first part, its successors or assigns, shall have the right to distribute such water as may flow through said canal to the holders of such water rights *pro rata*," etc.

We need not stop to determine whether under this deed the
[1, 2] West Gallatin Irrigation Company, or its successor, the Low Line Irrigation Company, could compel Verwolf to accept *pro rata* distribution of the available water supply with the later purchasers of water rights from the same common grantor when the supply was insufficient to furnish the maximum amount to which each user was entitled. For the purposes of this appeal we assume as correct the postulates stated in the brief of counsel for plaintiff, *viz.:* That by virtue of his deed and the circumstances disclosed by the record Verwolf was entitled originally to receive eighty inches of water every year upon payment of the stipulated rental fee, "subject to being prorated with other purchasers of water rights from said West Gallatin Irrigation Company within the carrying capacity of the canal and water supply in case of extreme drought, but did not become obligated to prorate with any person or corporation purchasing water in excess of the carrying capacity of the canal or water supply"; that the Low Line Irrigation Company took the property constituting the low line system burdened with the right which Verwolf had acquired; that it thereafter contracted to supply more water than its distributing system would convey to the users; that in December, 1909, notice was served upon Verwolf that his right would be respected and water furnished to him according to the terms of his deed;

[70 Mont. 570.]

that at the time the Low Line Irrigation Company acquired the low line system Verwolf's right had become vested private property, of which he could not be deprived except by his own conveyance or by operation of law, and that he did not convey any part of such right. Still the question remains, Did he lose his right in whole or in part by operation of law, that is, by prescription?

It is alleged in the answer, in effect, and found by the court upon ample evidence, that for more than ten years before the commencement of this action the Low Line Irrigation Company did insist upon a construction of the deed in harmony with the theory that the water right acquired by the deed was not superior to the water right acquired by a holder of its capital stock, and that upon this theory it asserted the right to make a *pro rata* distribution of the available supply of water to Verwolf and its stockholders. In other words, the court found that from 1909 to 1921 the Low Line Irrigation Company treated Verwolf as though he were the owner of eighty shares of its capital stock and distributed the available supply of water to him and the other users upon the basis of the number of shares held by each, and that with full knowledge of the facts Verwolf accepted such distribution. The evidence discloses without conflict that the possession of the Low Line Irrigation Company of the waters in question to the extent that the use was withheld from Verwolf was open, notorious, continuous, exclusive, adverse, hostile and under claim of right for the full period of twelve years prior to the commencement of this action. That the right to the use of water for irrigation or other lawful purposes may be lost by one and acquired by another by prescription is settled beyond controversy in this jurisdiction. (*State* v. *Quantic*, 37 Mont. 32, 94 Pac. 491; *Smith* v. *Duff*, 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981; *Featherman* v. *Hennessy*, 42 Mont. 535, 113 Pac. 751; *McDonnell* v. *Huffine*, 44 Mont. 411, 120 Pac. 792; *Custer Con. Min. Co.* v. *City of Helena*, 52 Mont. 35, 156 Pac. 1090; *Hays* v. *De Atley*, 65 Mont. 558, 212 Pac. 296; *Glantz* v. *Gabel*, 66 Mont. 134, 212 Pac. 858.)

But counsel for plaintiff invoke the provisions of section 9024,
**[3, 4]** Revised Codes of 1921: "In no case shall adverse pos-
session be considered established under the provision of any
section or sections of this Code unless it shall be shown that the
land has been occupied and claimed for a period of ten years
continuously, and the party or persons, their predecessors and
grantors, have, during such period, paid all the taxes, state,
county, or municipal, which have been legally levied and as-
sessed upon said land."

The statute was first enacted in this state in 1917 (Chap. 3,
Laws 1917); it is prospective, not retroactive, in its operation,
but, in any event, it has no application to the facts of this case.
It deals exclusively with land, as such, and with taxes levied
against the land. The deed of the West Gallatin Irrigation
Company did not convey to Verwolf any interest in the canal
or distributing system. By its appropriations the company ac-
quired merely the right to the use of the waters—not a title
to the *corpus* of the waters (*Norman* v. *Corbley,* 32 Mont. 195,
79 Pac. 1059), and it conveyed to Verwolf the same character
of right. A water right—a right to the use of water—while it
partakes of the nature of real estate (*Middle Creek Ditch Co.*
v. *Henry,* 15 Mont. 558, 39 Pac. 1054), is not land in any sense,
and, when considered alone and for the purpose of tax-
ation, is personal property. (*Helena Water Works Co.* v. *Set-
tles,* 37 Mont. 237, 95 Pac. 838.) When considered otherwise,
it is not subject to taxation independently of the land to which
it is appurtenant, and we are satisfied that the language of
section 9024 is not open to the construction that, before one
may acquire title to the whole or a part of a water right by
adverse possession, he must pay all taxes upon the land to
which the water right is appurtenant for the full period of
ten years.

Whatever may be said upon the question of the priority or
extent of the Verwolf water right as it existed originally by
virtue of the deed from the West Gallatin Irrigation Company,
upon the expiration of ten years from 1909 the Low Line Irri-
gation Company acquired by prescription the right to have it

measured by the same standard applicable to a right represented by eighty shares of its capital stock, and the extent of such a right is determined by the by-laws of the company as follows: ''In case there be from any cause less than the full amount of water belonging to the company in the canal, each stockholder shall, without complaint, accept his *pro rata* share of what there is, the same to be determined, and the headgate set accordingly, by the superintendent or his assistants.''

The trial court was also justified in denying plaintiff any **[5]** relief upon the ground of laches. (*Kavanaugh* v. *Flavin,* 35 Mont. 133, 88 Pac. 764; *Riley* v. *Blacker,* 51 Mont. 364, 152 Pac. 758; *Harrington* v. *Butte & Sup. C. Co.,* 52 Mont. 263, 157 Pac. 181; *Clary* v. *Fleming,* 60 Mont. 246, 198 Pac. 546; *O'Hanlon* v. *Ruby Gulch Min. Co.,* 64 Mont. 318, 209 Pac. 1062; *State ex rel. Cascade County* v. *Poland,* 66 Mont. 286, 213 Pac. 800; *Kofoed* v. *Bray,* 69 Mont. 78, 220 Pac. 532.) For more than ten years Verwolf stood by and permitted the Low Line Irrigation Company to invade his right and treat it as though it represented a right evidenced by eighty shares of capital stock and nothing more, and during that period the company sold shares of stock to other users and incurred obligations which would be affected adversely if the Verwolf right were now given the preference claimed for it. These circumstances relieve the defense of the objection successfully urged in *Hall* v. *Hall, ante,* p. 460, 226 Pac. 469.

The judgment is affirmed.                          *Affirmed.*


Mr. Chief Justice Calloway and Associate Justices Cooper, Galen and Stark concur.